Dominic DIMENCO, T/A Complete Painting; Terri Dimenco; and Vincent J. Dimenco, Plaintiffs,

v.

SELECTIVE INSURANCE COMPANY OF AMERICA, a corporation of the State of New Jersey, Defendant Third Party Plaintiff,

v.

Imperial Premium Finance, Inc., a corporation of the State of Delaware, Third Party Defendant.

No. Civ.A. 01C02253FSS.

Superior Court of Delaware.

Submitted May 16, 2002.
Decided Aug. 21, 2002.

---

81. *Id.* at 278–79.

985

Jerome M. Capone, Delaware, for Plaintiffs.

Robert K. Pearce, Trzuskowski Kipp Kelleher & Pearce, P.A., Delaware, for Defendant, Third Party Plaintiff.

Tiffany L. Geyer, Ashby & Geddes, Delaware, for Third Party Defendant.

## OPINION AND ORDER

SILVERMAN, J.

Procedurally, this insurance coverage case is complicated, as it involves third-party practice and dispositive, cross-motions. Substantively, however, the case presents a relatively straightforward question of first impression about the relationship between two sections of the Delaware Insurance Code, 18 *Del. C.* § 3901 and 4809.

The issue is whether an insurance premium financing company's attempt to cancel Plaintiffs' auto insurance for nonpayment was effective. Specifically, the court must decide whether 18 *Del. C.* § 4809[1] only allowed Plaintiffs' insurer, Selective, rather than the premium finance company, Imperial, to send the statutorily required notice of intent to cancel. The answer to that question turns on the wording of Chapter 39 in Title 18, concerning automobile casualty insurance, and which is incorporated into § 4809. If Imperial had legal authority to send the cancellation notice, the court then must decide whether Imperial's "Notice of Intent to Cancel," particularly its language and timing, meets the code's requirements.

1. DEL.CODE ANN. tit. 18, § 4809 (1974).

## I.

All the parties move for summary judgment. The court is entertaining the motions because there are no material disputes of fact.[2] It is agreed that Plaintiffs purchased a commercial automobile policy from Selective through a broker. Because Plaintiffs were unable or unwilling to pay a full year's premiums in a lump sum, the broker arranged financing through Imperial, an insurance premium financing company. Imperial loaned Plaintiffs money for the Selective policy, and in turn, Imperial expected Plaintiffs to keep their promise to repay their loan in regular monthly installments.

When the broker placed the insurance and obtained Imperial's financing, the broker signed a "power of attorney" on Plaintiffs' behalf. Plaintiffs now deny that they knew about it, or that they authorized their broker to give Imperial a power of attorney. That inconsistency is not material because it is undisputed that Selective notified Plaintiffs that their broker had signed a power of attorney. When it sent them their payment coupon book, Selective specifically gave Plaintiffs a fair chance to "disaffirm the Premium Finance Agreement," which they did not do. Instead, Plaintiffs made some loan payments, thereby accepting Imperial's premium financing and ratifying their broker's act. Further, Imperial's cancellation notices, presented below, clearly invoked the power of attorney and put Plaintiffs on further notice. Again, Plaintiffs did not protest. At this point, Plaintiffs do not seriously challenge the power of attorney.

Regardless, Plaintiffs' payment history with Imperial was poor and they fell into arrears. Eventually, on October 13, 1998,

Imperial sent a form captioned "NOTICE OF INTENT TO CANCEL," reading:

> If the total due ... is not received by 10/24/1998 we will request cancellation of your financed insurance policies to be effective on the date indicated.

The form then identified the policy by number and provided blocks where the date of notice and the "effective date of cancellation," 10/29/98, were filled in. The form further provided delinquent payment information, including the specific arrears. After the policy number, cancellation date and the delinquent payment information, the form's text continued:

> Because you have not made payment to us as required in your premium finance agreement you are in default on your loan and hereby are notified of our intent to cancel the policies described above, effective as of the date indicated, subject to policy terms and conditions. Such cancellation by us is in accord with appropriate state law and our power of attorney granted by you or on your behalf pursuant to the premium finance agreement.

On October 26, 1998, Imperial sent a second notice to Plaintiffs captioned "NOTICE OF CANCELLATION." After identifying the loan number, reciting the "date of notice," which was "10/26/1998," restating the effective cancellation date, which remained "10/29/1998," and providing the "unpaid balance of your account," the form read:

> In accordance with our power of attorney from you we are instructing the insurance company(s) listed below to cancel the policy(s) listed below on the date indicated above because of default under the terms of your Premium Finance Agreement....

---

**2.** *Merrill v. Crothall–American, Inc.,* 606 A.2d 96, 99 (Del.Supr.1992) (citing *Moore v. Sizemore,* 405 A.2d 679, 680 (Del.Supr.1979) (designating disputed factual issues as those whose resolution is necessary to decide case)).

After identifying the policy by its number, the form further notified Plaintiffs that Imperial had advised Selective that:

> We hereby acknowledge and affirm that written notice of the exercise of our right and intent to cancel has been mailed to the Borrower pursuant to appropriate state law. The Borrower has failed to cure any and all default as of the date of this notice. Therefore we instruct the insurer to cancel in accordance with our power of attorney from the Borrower and our notice to you.

Plaintiffs did not respond to either notice, much less pay the arrears. Meanwhile, like its form stated, Imperial simultaneously sent its cancellation notice to Plaintiffs and instructed Selective to cancel Plaintiffs' insurance for nonpayment.

Several months after the putative cancellation date, a pickup truck owned by Plaintiffs' business, and driven by Plaintiffs' son, collided with a car. The other motorist sued Plaintiffs. Claiming inadequate notice of cancellation as a matter of law, Plaintiffs now demand coverage and a defense from Selective or Imperial. Selective and Imperial deny coverage and the obligation to defend. Alternatively, through third-party practice, Imperial claims that Selective is responsible, and *vice versa*.

■ Although Plaintiffs point out that Selective did not process Imperial's instruction until after the accident, it is irrelevant as to the adequacy of notice question presented here. Were Imperial's notice sufficient, Plaintiffs have no claim. Once Imperial instructed Selective to cancel, Selective was obligated to return the unused premium to Imperial. Neither Selective nor Imperial had any obligation to continue insuring Plaintiffs. That is so even if Selective did not process the paperwork immediately and return the unused premium to Imperial. Those matters are between Imperial and Selective. The court does not have to look into those issues at Plaintiffs' behest.

## II.

■ Plaintiffs advance two arguments why Imperial's attempt to cancel Plaintiffs' insurance coverage was defective. First, Plaintiffs contend that notice of cancellation must be provided by the insurer, not merely by the insurance premium financing company. However, 18 *Del. C.* § 4809(a) describes conditions under which premium finance companies are authorized to cancel contracts on behalf of an insured.[3]

Plaintiffs focus on the fact that this case involves auto insurance, which implicates § 4809(a)'s requirement that automobile insurance cancellation:

> may be made only in a manner which is consistent with Chapter 39 of this title and the method of such cancellation shall be consistent with the time periods and be subject to the rights of reinstatement provided in that chapter for cancellation on the basis of nonpayment of premium.

Chapter 39, specifically § 3905(a), provides:

> No cancellation of a policy ... shall be effective unless notice thereof is mailed or delivered by the insurer to the named

---

**3.** § 4809(a) states, in relevant part:

> When in connection with a premium finance agreement, a power of attorney or other authority to cancel any insurance contract or contracts on behalf of the insured is given to a premium finance compa-ny, such insurance contract or contracts may not be can celled by the premium finance company unless such cancellation is effectuated in accordance with this section.... *Id.*

insured at least 30 days prior to the effective date of cancellation ..., except that, where cancellation is for nonpayment of premium, at least 10 days notice of cancellation accompanied by the reason therefore shall be given.

Because § 4908 incorporates § 3905's requirements and § 3905 refers only to notice provided by "the insurer," Plaintiffs conclude that it is not enough for a premium financing company to give notice of cancellation to its nonpaying borrower, which is what Imperial merely did. Plaintiffs support their interpretation of § 4909(a) with their view of the statute's legislative history and case law from other jurisdictions.[4]

Plaintiffs read § 4809(a)'s limited reference to § 3905 too literally. The unmistakable, overall purpose of § 4809 is to put insurance premium finance companies in the insurers' shoes when it comes to cancelling financed insurance policies for failure to make loan payments. Reading § 4809(a) in such a way also makes basic business sense.

Once an insurance premium finance company has financed a policy, the insurer has been paid in full and it has little concern about whether its insured repays the finance company. The loss falls on the premium finance company and not the insurer if, as in this case, an insured fails to repay a premium finance loan. Thus, it is against the insurer's economic interest to cancel a financed policy and give back any unused premiums. The court rejects Plaintiffs' argument that insurers have motives to cancel policies whenever they have the chance. Insurance companies are in business to sell insurance, keep their policies in force and retain their premiums.

This is a case-in-point. As mentioned, Selective dragged its feet for several months after Imperial told it to cancel Plaintiffs' policy. Selective finally put the cancellation paperwork through when this claim on the policy materialized. Perhaps the timing was coincidental, but it was not until it was in Selective's interest that Selective became responsive. Plaintiffs' interpretation of § 4809 invites confusion and litigation between insurance companies, premium finance companies and insureds over who should have done what and when. That sort of litigation is in no one's best interest. Again, the third-party practice in this case proves the point.

Chapter 48 of the Delaware Insurance Code reflects the General Assembly's approval of insurance premium financing, which helps meet the public's need for access to insurance. But for § 4809, it would be harder for premium financing companies to do business. Presumably, therefore, insurance premium financing would be less available and more expensive. That, in turn, would make it more difficult for some people and businesses to obtain insurance.

Section 4809's reference to the casualty insurance chapter, which Plaintiffs emphasize, is not meant to create a procedural steeplechase for premium finance companies. The statute does not require premium finance companies to enlist insurers' cooperation in cancelling the insurers' policies. Cancellation for nonpayment of a premium finance company's loan does not hinge ritualistically on the insurer's notifying the borrower. Section 4809's reference to Chapter 39 simply requires the premium finance company to meet the additional terms and take the extra steps that an insurer must take before cancelling

---

4. See, e.g., *Faizan v. Grain Dealers Mutual Insurance Co.*, 254 N.C. 47, 118 S.E.2d 303, 305 (1961)(referenced statute specified that insurer shall provide cancellation notification).

an automobile liability policy. For example, a cancellation notice under § 3905, in contrast to a cancellation under § 4809, must be "accompanied by the reason therefore," Moreover, compared to other insurance policies, the reasons justifying cancellation of automobile liability insurance are highly regulated.[5] As long as premium financing companies are bound by Chapter 39's terms, which they are by § 4809, there is no reason to require that automobile policy cancellation notices for nonpayment come strictly from the insurers. And, as explained above, there is good reason to allow premium finance companies to give notice directly to their customers.

Plaintiffs are correct that § 4809's language could have been more precise. It could have said that cancellation of automobile casualty insurance may be made by the premium finance company, so long as it complies with the requirements in Chapter 39 that apply to insurers. But that is implicit in the statute's actual wording. Section 4809's meaning is plain enough.[6] Imperial was statutorily empowered to give notice of cancellation to Plaintiffs.

### III.

■ Plaintiffs' alternative argument is that even if the law allowed the premium financing company to cancel the Selective policy, Imperial's notice of cancellation was inadequate. Imperial relied on § 4809(b), however, which states:

> Not less than 10 days' written notice shall be mailed to the insured at the insured's last known address of the in-

tent of the premium finance company to cancel the insurance contract. . . .

Further, § 4809(c) reads:

> After the expiration of such 10–day period, the premium finance company may thereafter cancel in the name of the insured such insurance contract or contracts by mailing to the insurer a notice of cancellation. . . .

Plaintiffs conclude that Imperial's written notices were ineffective under the statute.

Again, Plaintiffs are being too literal. Although Imperial captioned its ten day notice of cancellation as "Notice of Intent to Cancel," the document unmistakably put Plaintiffs on notice that their insurance coverage would be cancelled on October 29, 1998, unless they were current with Imperial. The statute's reference to notice of cancellation is not set off by quotation marks. Considering that there is only one reasonable way to read Imperial's ten day notice, the court is satisfied that it meets § 4809's requirements.

By the same token, the actual notice of cancellation sent by Imperial to Plaintiff is unequivocal that the cancellation was effective October 29, 1998. Plaintiffs have no rational claim that they were aware for less than ten days that their insurance was going to be cancelled on October 29, 1998, and that somehow they believed their insurance remained in force after that date. Plaintiffs are businesspeople and the insurance was for a commercial vehicle. Plaintiffs may not have been familiar with insurance premium financing, but they had to have known that insurance coverage costs money and they were not paying for

---

**5.** See DEL.CODE ANN. tit. 18, § 3904 (sufficient reasons include premium nonpayment, obtaining policies through material misrepresentations, violation of policy terms and conditions, and knowingly failing to disclose motor vehicle accidents and moving traffic violations).

**6.** See *Gonzalez v. Devlin*, 792 A.2d 188 (Del. 2002) (citing *Giuricich v. Emtrol Corp.*, 449 A.2d 232, 238 (Del.1982)) (where General Assembly's intent clear from statutory language, statutory interpretation unnecessary).

their truck's coverage. Furthermore, Plaintiffs indisputably ignored Imperial's clear warnings that their coverage would be, and then had been, cancelled. Plaintiffs' first protest came only after their son had an accident. There is nothing about how Plaintiffs were treated here that supports reading the insurance code in a way that makes them entitled to insurance coverage for which they paid no one.

Finally, the court appreciates that making Selective's coverage out of reach may be a problem for the plaintiff in the underlying personal injury case. Based on the undisputed facts and the law, however, the personal injury plaintiff collided with an uninsured motorist, or at least someone no longer insured by Selective. The court will not twist the law to find a deeper pocket for the underlying Plaintiff.

## IV.

For the foregoing reasons, Plaintiffs' Motion for Summary Judgment is *DENIED* and Selective's Motion for Summary Judgment is *GRANTED*. This holding renders the third-party motions *MOOT*

IT IS SO ORDERED.