Santosh REDDY, M.D., Defendant
Below, Appellant,

v.

The PMA INSURANCE COMPANY and
CNA Insurance Company a/s/o Harbor
Health Care & Rehabilitation Center,
Inc., Plaintiffs Below, Appellees.

No. 644, 2010.

Supreme Court of Delaware.

Submitted: April 20, 2011.
Decided: May 31, 2011.

Gilbert F. Shelsby, Jr., Esquire (argued) and Michael J. Logullo, Esquire, Shelsby & Leoni, P.A., Stanton, Delaware, for appellant.

David A. Denham, Esquire and Robin M. Grogan, Esquire, Bifferato Gentilotti, LLC, Wilmington, Delaware, and Gerard J. Emig, Esquire (argued), Gleason, Flynn, Emig & Fogleman, Rockville, Maryland, for appellees.

Before HOLLAND, JACOBS and RIDGELY, Justices.

HOLLAND, Justice:

The defendant-appellant, Dr. Santosh Reddy ("Dr. Reddy"), appeals from the final judgment that was entered by the Superior Court in favor of the plaintiffs-appellees, PMA Insurance Co. and CNA Insurance Co., as subrogees of Harbor Health Care and Rehabilitation Center, Inc. (collectively known as "Harbor Health"). Dr. Reddy raises two issues in this appeal. First, he contends that the Superior Court erred as a matter of law in denying his Motion for Summary Judgment and renewed Motion for Judgment as a Matter of Law, both based upon the statute of limitations. Second, he argues that the Superior Court erred as a matter of law in denying his Motion for Judgment as a Matter of Law following the conclusion of the plaintiffs' case-in-chief because the plaintiffs failed to establish the element of causation in their claim against him.

We have concluded that both of Dr. Reddy's claims are without merit. Therefore, the judgment of the Superior Court must be affirmed.

### Facts

Nickicolma Spriggs ("Ms. Spriggs") was born in the District of Columbia in 1983 with severe disabilities including cerebral palsy, spastic quadriplegia, brain damage, and a seizure disorder. In 1991, the District of Columbia and Harbor Health entered into a contract whereby Harbor Health would take over Ms. Spriggs' long term care. Ms. Spriggs was transferred to Harbor Health's pediatric facility in Delaware as a full time resident in 1991.

Harbor Health requested that Dr. Reddy act as a consultant for the medical care of Ms. Spriggs. Dr. Reddy first evaluated Ms. Spriggs in early 1992 and wrote an order for Ms. Spriggs to be evaluated at A.I. duPont Children's Hospital ("duPont") for her scoliosis. While at duPont, x-rays revealed her scoliosis was at a thirty-three degree curvature. Doctors at duPont recommended that she return in six months to have her condition reevaluated. After this second evaluation, Dr. Kurt Dabney ("Dr. Dabney") recommended that Ms. Spriggs return to duPont at six month intervals to have her scoliosis monitored.

Harbor Health did not return Ms. Spriggs to duPont for evaluation of her scoliosis until 1998, six years after her second evaluation. Dr. Dabney x-rayed her spine and discovered that the scoliosis had advanced from thirty-three degrees to eighty-five degrees. Dr. Dabney recommended that Ms. Spriggs undergo surgery to help straighten her spine. However, the District of Columbia had concerns over whether the surgery should be performed. While discussions about those concerns were ongoing, Ms. Spriggs died on November 26, 1998.

In 2001, Ms. Spriggs' grandmother retained an attorney in the District of Columbia to represent the Estate of Ms. Spriggs in claims against both Harbor Health for medical negligence and the District of Columbia for neglect. Dr. Reddy was not named as a party in that lawsuit. The District of Columbia settled the claim against them for $1.2 million. The lawsuit against Harbor Health was settled on November 28, 2006, for $725,000.

On November 5, 2008, Harbor Health filed a separate action for contribution

against Dr. Reddy arising out of Ms. Spriggs' death. In his answer, Dr. Reddy raised the affirmative defense that the period of limitations for actions based upon medical negligence had expired. The Superior Court denied Dr. Reddy's Motion for Summary Judgment based on the expiration of the statutory limitations period, ruling that the three-year statute of limitations was applicable to this claim for contribution.

At trial, Harbor Health presented two medical experts, Dr. Krenytzky and Dr. Dabney. Dr. Dabney testified that when he saw Ms. Spriggs in 1998, her scoliosis was causing restrictive lung disease and recommended surgery. He also testified that had Ms. Spriggs been regularly seen by him every six months in accordance with his recommendation to Harbor Health, he would have operated on her spine when it reached the sixty degree curvature range. Dr. Dabney further opined that her progression was at three to four degrees per month and that he would have operated sometime during 1995–1996. Dr. Krenytzky testified that Dr. Reddy breached the applicable standard of care.

Following the close of Harbor Health's case-in-chief, Dr. Reddy filed a Motion for a Judgment as a Matter of Law, arguing that Harbor Health had failed to establish causation. That motion was denied. The jury returned a verdict that found Dr. Reddy was negligent in his care of Ms. Spriggs and was liable for contribution to Harbor Health for 25% of the settlement amount that Harbor Health had paid. The Superior Court denied Dr. Reddy's renewed Motion for Judgment as a Matter of Law on the statute of limitations defense.

1. Del.Code Ann. tit. 10, § 6301, *et seq.*

2. Del.Code Ann. tit. 10 § 6301(a).

### Contribution Among Tort–Feasors

Contribution is the right of one who has discharged a common liability to recover from another who is also liable. The right of contribution has been codified under Delaware law in the Uniform Contribution Among Tort–Feasors Law ("Uniform Contribution Act").[1] The statutory "right of contribution exists among joint tort-feasors."[2] Under the Uniform Contribution Act, a "joint tort-feasor" is defined as "2 or more persons jointly or severally liable in tort for the same injury to person or property, whether or not judgment has been recovered against all or some of them."[3]

The Uniform Contribution Act does not have a specially designated statute of limitations. Therefore, at trial, Harbor Health argued that actions for contribution are governed by the general statute of limitations set forth in title 10, section 8106(a) of the Delaware Code, which provides:

[n]o action to recover damages for trespass, no action to regain possession of personal chattels, no action to recover damages for the detention of personal chattels, no action to recover a debt not evidenced by a record or by an instrument under seal, no action based on a detailed statement of the mutual demands in the nature of debit and credit between parties arising out of contractual or fiduciary relations, no action based on a promise, no action based on a statute, and no action to recover damages caused by an injury unaccompanied with force or resulting indirectly from the act of the defendant shall be brought after *the expiration of 3 years from the accruing of the cause of such action;* subject,

3. Del.Code Ann. tit. 10 § 6301.

however, to the provisions of §§ 8108–8110, 8119 and 8127 of this title.[4]

The Superior Court agreed with Harbor Health's argument and held that the applicable statute of limitations for Harbor Health's claim for contribution from Dr. Reddy is three years. Under the Uniform Contribution Act, the right to seek contribution from a joint tort-feasor does not accrue until a joint tort-feasor "has by payment discharged the common liability or has paid more than his or her pro rata share thereof."[5] Accordingly, the Superior Court held that Harbor Health's complaint for contribution was timely filed.

### Medical Negligence Act

Dr. Reddy argues that Harbor Health's claim for contribution is subject to the two-year statute of limitations found in the Delaware medical negligence statute.[6] The statute defines medical negligence as "any tort or breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider to a patient."[7] Section 6856 states that "[n]o action for the recovery of damages upon a claim against a health care provider for personal injury, including personal injury which results in death, arising out of medical negligence shall be brought after the expiration of 2 years from the date upon which such injury occurred...."[8] In addition, section 8128 of title 10 states: "No action for the recovery of damages upon a claim based upon alleged health care malpractice, whether in the nature of a tort action or breach of contract action, shall be brought after the expiration of the time period for bringing such an action set forth in § 6856 of Title 18."[9]

The unambiguous language of the medical malpractice statute indicates that the General Assembly intended for its statute of limitations to apply to claims brought by the consumer of health services against a health care provider.[10] The statute defines medical negligence as "any tort or breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider to a patient."[11] The two exceptions to the statute of limitations found in section 6856 both relate to the ability of the injured person to bring suit against a health care provider.

The contribution claim brought against Dr. Reddy by Harbor Health is neither an action for tort nor an action for breach of contract by a consumer of health care services against a health care provider. Nevertheless, Dr. Reddy argues, Harbor Health's contribution claim is really a medical negligence claim, since it arose from the original medical negligence claim that was brought in the District of Columbia. Dr. Reddy's argument disregards the fact that a claim for contribution by a joint tort-feasor must by definition arise from

---

4. Del.Code Ann. tit. 10, § 8106(a) (emphasis added).

5. Del.Code Ann. tit. 10 § 6302(b).

6. Del.Code Ann. tit. 18 § 6856.

7. Del.Code Ann. tit. 18 § 6801(7).

8. Del.Code Ann. tit. 18 § 6856.

9. Del.Code Ann. tit. 10 § 8128.

10. *See Rowland v. Skaggs Cos., Inc.,* 666 S.W.2d 770, 773 (Mo.1984) ("While § 516.105 clearly covers all claims brought by consumers of health care services against health care providers for injuries related to such services, we find no words indicating a legislative intent to include suits for contribution among health care providers").

11. Del.Code Ann. tit. 18 § 6801(7).

some underlying tort.[12] That fact, however, does not alter the independent nature of a joint tort-feasor's cause of action for contribution.[13]

██ Dr. Reddy relies on several of this Court's prior decisions, including *Dambro v. Meyer*,[14] *Taylor v. Pontell*,[15] and *Christiana Hospital v. Fattori*,[16] for the proposition that the General Assembly intended to limit all medical negligence claims to two years from the date of injury. Those cases are distinguishable from this one in that all three barred a suit outside of the two-year statute of limitations period for a claim of medical negligence that was brought by the patient against the health care provider.[17] None of those cases involved a contribution claim by one tort-feasor against another. Accordingly, the application of the general three-year statute of limitations to Harbor Health's claim for contribution does nothing to undermine the holdings in those cases or the General

Assembly's intent.[18] An action for contribution is independent of the underlying tort and originates with the establishment of a joint obligation on a liability shared by the tort-feasors.[19]

### Other Jurisdictions

Several other jurisdictions that have confronted the same issue have found that actions for contribution are not subject to the statute of limitations embedded in their respective medical malpractice statutes. In *Rowland v. Skaggs Cos., Inc.*, the Missouri Supreme Court found that an "action for contribution is neither grounded in tort nor reasonably related" to the other types of actions listed in the statute, "[r]ather it accrues from the existence of joint obligation on a liability shared by tort-feasors."[20] The Missouri Court went on to note that by definition a suit for contribution among tort-feasors must arise from the same underlying tort action, but

**12.** *See* Del.Code Ann. tit. 10 §§ 6302(a)-(b).

**13.** *See Rowland v. Skaggs Cos., Inc.*, 666 S.W.2d at 774.

**14.** *Dambro v. Meyer*, 974 A.2d 121 (Del.2009).

**15.** *Taylor v. Pontell*, 3 A.3d 1099 (Del.2010).

**16.** *Christiana Hospital v. Fattori*, 714 A.2d 754 (Del.1998).

**17.** *See Dambro v. Meyer*, 974 A.2d 121 (Del. 2009) (holding that the patient's injury occurred, and the two-year limitations period began to run, on the date of the physician's allegedly negligent misreading of the patient's mammogram results, and thus the patient's claim was time-barred); *Taylor v. Pontell*, 3 A.3d 1099 (Del.2010) (holding that the savings statute found in Del.Code Ann. tit. 10 § 8118 did not apply to medical malpractice claims and thus barred patient's claim against her cosmetic surgeon); *Christiana Hospital v. Fattori*, 714 A.2d 754 (Del.1998) (holding that savings statute was not applicable to medical malpractice claims brought by the wife, son, and Estate of Samuel Fattori arising out his

death against various hospital and physician defendants).

**18.** *See Dambro v. Meyer*, 974 A.2d at 130 (Delaware's Medical Malpractice Act was enacted in 1976 to address concerns about the law that existed at the time and the rising costs of malpractice liability insurance, and to eliminate the uncertainty created by the present open-ended period of limitations).

**19.** *See Rowland v. Skaggs Cos., Inc.*, 666 S.W.2d at 773.

**20.** *Id. But see Hayes v. Mercy Hospital and Medical Center*, 136 Ill.2d 450, 145 Ill.Dec. 894, 557 N.E.2d 873 (1990) (holding that the Illinois Medical Malpractice Act statute of repose barred all actions, whether in law or equity, after the four year time period expired); *Krasaeath v. Parker*, 212 Ga.App. 525, 441 S.E.2d 868 (1994) (holding that the medical malpractice statute of repose, which stated that the five-year statute of limitation was intended to create a five-year statute of ultimate repose and abrogation, barred the filing of a contribution claim).

that did not alter the independent nature of the cause of action for contribution.[21] The Nevada Supreme Court has also found that claims for indemnity are not governed by the limitations period applicable to the underlying tort.[22] In addition, the Maine Supreme Court has found that the statute of limitations pertinent to a contribution claim is the limitation that applies to the contribution claim, not to the underlying tort.[23]

■ The rationale of these cases from other jurisdictions is consistent with long-standing Delaware law, which has held that an action for indemnity or contribution does not accrue until a joint tort-feasor has paid more than its pro rata share to the injured party. The concept that a claim for contribution is not subject to the underlying limitations of the tort or breach of contract is found within the contribution statute itself, which states that a "joint tortfeasor is not entitled to a money judgment for contribution until he or she has by payment discharged the common liability or has paid more than his or her pro rata share thereof." [24]

## Absurd Result Principle

In this case, Dr. Reddy argues, any claim for contribution is controlled by the two-year medical malpractice statute of limitations. Therefore, he submits, the claim had to be filed no later than two years from the date of Ms. Spriggs' last treatment by Harbor Health prior to her death in 1998. According to Dr. Reddy, because the applicable statute of limitations is two years, Harbor Health's claim for contribution had to be filed in Delaware a full year before the underlying tort suit was filed by Ms. Spriggs' estate against Harbor Health in the District of Columbia.

The "absurd result" principle first appeared in the late eighteenth and early nineteenth century in Britain.[25] These early British cases pointed to the general rule that in construing acts of Parliament, the words of the act are to be interpreted strictly, unless absurdity or injustice would result from a strict construction.[26] In 1765, Blackstone commented that "[a]s to the effects and consequence [of statutes], the rule is, that where words bear either none, or a very absurd signification, if literally understood, we must a little deviate from the received sense of them." [27]

21. *Rowland v. Skaggs Cos., Inc.*, 666 S.W.2d at 774.

22. *Saylor v. Arcotta*, 225 P.3d 1276, 1278 (Nev.2010) ("Equitable indemnity claims are not governed by the limitations period applicable to the underlying tort").

23. *St. Paul Ins. Co. v. Hayes*, 676 A.2d 510, 511 (Me.1996) (holding that language in statute, any action for damages, did not apply to contribution because it is an equitable action).

24. Del.Code Ann. tit. 10, § 6302(b).

25. Veronica M. Dougherty, *Absurdity and the Limits of Literalism: Defining the Absurd Result Principle in Statutory Interpretation*, 44 Am. U.L.Rev. 127, 135 (1994).

26. *See, e.g., Wansey v. Perkins*, 135 Eng. Rep. 55, 63 (C.P.1845) (Cresswell, J.) ("It may be

laid down as a safe rule, in the construction of acts of parliaments, that we are to look at the words of the act and to render them strictly, unless manifest absurdity or injustice should result from such a construction."); *Perry v. Skinner*, 150 Eng. Rep. 843, 845 (Ex. 1837) (Parke, B.) ("The rule by which we are to be guided in construing acts of Parliament is to look at the precise words, and to construe them in their ordinary sense, unless it would lead to any absurdity or manifest injustice."); *Becke v. Smith*, 150 Eng. Rep. 724, 726 (Ex. 1836) (Parke, B.) (stating "useful rule" that courts adhere to ordinary meaning of statute unless interpretation "leads to any manifest absurdity or repugnance").

27. 1 William Blackstone, *Commentaries on the Laws of England*, *61 (1st ed. 1765).

Later in the same volume, when describing the principal rules to be used in statutory construction, Blackstone commented that "if there arise out of [acts of parliament] ... any absurd consequences, manifestly contradictory to common reason, they are, with regard to those collateral consequences, void." [28]

The absurd result principle became part of United States Supreme Court jurisprudence as early as 1819,[29] as an element of what was referred to as the "golden rule" of statutory interpretation.[30] The "golden rule" was grounded upon ordinary meaning of the words used by the legislature, but provided specific exceptions where absurdity or some similar consequence would result from a strict interpretation of the legislature's words.[31]

Delaware courts have long recognized the absurd result principle. In 1934, for example, the Superior Court stated that the letter of the law is to be strictly construed, but not "where adherence to the letter would result in absurdity or injustice." [32] This principle became an impor-

tant part of statutory construction and remains operative in Delaware statutory construction to this day.[33]

The United States District Court for the District of Delaware invoked the absurd result principle in rejecting the same interpretation of the Delaware medical malpractice statute being submitted to this Court by Dr. Reddy. In doing so, that court stated:

The Medical Center contends that the Delaware courts have strictly construed the statute of limitations for medical malpractice. The Medical Center thus implies that the legislature may have intended the medical malpractice limitations period, which starts to run at the date of injury, to apply to claims for indemnification as well. *Such a conclusion makes no sense. In the context of a third-party claim for contribution where the underlying tort claim had a one-year limitations period, the Delaware Superior Court noted the absurd result that would occur if the statute of*

**28.** *Id.* at *91.

**29.** Veronica M. Dougherty, *Absurdity and the Limits of Literalism: Defining the Absurd Result Principle in Statutory Interpretation,* 44 Am. U.L.Rev. 127, 135 (1994). *See Sturges v. Crowninshield,* 17 U.S. 122, 202–03, 4 Wheat. 122, 4 L.Ed. 529 (1819) (discussing absurdity as justifying departure from plain meaning of words); *see also United States v. Kirby,* 74 U.S. 482, 486, 7 Wall. 482, 19 L.Ed. 278 (1868) (arguing that statutory terms should be interpreted to avoid "injustice, oppression, or an absurd consequence").

**30.** *See* Veronica M. Dougherty, *Absurdity and the Limits of Literalism: Defining the Absurd Result Principle in Statutory Interpretation,* 44 Am. U.L.Rev. 127, 135 (1994).

**31.** *Id.*

**32.** *Wallen v. Collins,* 173 A. 801, 802 (Del.Super.Ct.1934).

**33.** *See Chase Alexa, LLC v. Kent County Levy Court,* 991 A.2d 1148, 1152 (Del.2010) ("Statutes must be construed as a whole, in a way that gives effect to all of their provisions and avoids absurd results."); *Director of Revenue v. CNA Holdings, Inc.,* 818 A.2d 953, 957 (Del.2003) ("Ambiguity may also be found if a literal reading of the statute would lead to an unreasonable or absurd result not contemplated by the Legislature."); *State v. Cooper,* 575 A.2d 1074, 1076 (Del.1990) ("Literal or perceived interpretations, which yield illogical or absurd results, should be avoided in favor of interpretations consistent with the intent of the Legislature."); *Spielberg v. State,* 558 A.2d 291, 293 (Del.1989) ("The statute must viewed as a whole, and literal or perceived interpretations which yield mischievous or absurd results are to be avoided."); *E.I. Du Pont De Nemours & Co. v. Clark,* 88 A.2d 436, 438 (Del.1952) ("The court must necessarily be guided by the presumption that the legislature did not intend an unreasonable, absurd, or unworkable result.").

*limitations began to run on the date of injury.*[34]

Accepting Dr. Reddy's argument in this case would lead to a similarly absurd result. Harbor Health was not served until 2001, under District of Columbia law. Under Delaware law for medical negligence suits, however, the two-year statute of limitations would have already expired. Thus, if Dr. Reddy's argument was accepted, Harbor Health would have been barred from filing its claim for contribution from Dr. Reddy before it was even served with the original complaint for medical negligence by Ms. Spriggs' representative.

### Contribution Action Independent

 Generally, "[a] determination of when the statute of limitations begins to run on a right to indemnification is grounded, first, in the events giving rise to the claim; and second, in the identification of what specifically identifiable event starts the statute of limitations to run, as a matter of law."[35] This principle applies specifically to the type of contribution claim at issue here. As the Superior Court has explained:

> [w]hen the concurring negligence of joint tort-feasors gives the injured party a cause of action, the incidental right of a joint tort-feasor to compel contribution is created. However, this right remains contingent, subordinate, and inchoate until one of the joint tort-feasors pays more than his proportionate share of the underlying claim. Thus, the general rule is that the statute of limitations governing claims for contribution runs from the time of discharge of the obli-

gation and not from the time when the original tort occurred.[36]

While the basis for a claim for contribution is created the moment when the joint tort-feasors harm an injured party, the specific right to bring a contribution claim does not exist unless and until one of the joint tort-feasors pays more than his or her proportionate share of the settlement of the underlying claim. Therefore, contrary to Dr. Reddy's position in this appeal, the two-year tort statute of limitations applicable to the injured parties' claim for medical negligence, and the three-year statute of limitations applicable to the joint tort-feasor's claim for contribution are not the same. Moreover, they do not run simultaneously from the moment of harm to the injured party.

 Harbor Health brought a claim for contribution, pursuant to section 6302 of the Uniform Contribution Act against a fellow health care provider and joint tort-feasor. Nothing in section 6856 of the medical malpractice statute eliminates the independent nature of a claim for contribution among joint tort-feasors or alters the general three-year statute of limitations applicable to such a claim. Delaware law has consistently held that a claim for contribution is separate and distinct from an action for personal injury. As the Superior Court stated:

> This Court has held that the personal injury statute of limitations was not a bar to a defendant's third party complaint for contribution because the third party claim is not for recovery of personal injuries but for contribution. The Court based this result on two grounds.

---

34. *Azarbal v. Medical Center of Delaware, Inc.*, 724 F.Supp. 279, 285 n. 14 (D.Del.1989) (citing *Goldsberry v. Frank Clendaniel, Inc.*, 109 A.2d 405, 408 (Del.Super.Ct.1954)) (emphasis added).

35. *Scharf v. Edgcomb Corp.*, 864 A.2d 909, 916 (Del.2004).

36. *Hall v. Hickman*, 1987 WL 17176 at *4 (Del.Super.Ct. Sept. 8, 1987) (internal citations omitted).

First, an action for contribution is a sort of equitable action between a defendant who has paid all or more than his fair share of a judgment for personal injuries and other joint defendants for a proration of their several liabilities among themselves and therefore, the personal injury statute of limitations does not apply. Second, a plaintiff may, and often does, wait until the day before the statute elapses before filing suit. Before the defendant is served the time has expired and he would be barred from seeking contribution, if the statute applied. The Court held the statute inapplicable to contribution because it was inconceivable that the Legislature should purport to grant the valuable right of contribution among joint tortfeasors but, for all practical purposes, place it within the power of the original plaintiff to decide whether or not it could be exercised.[37]

That same reasoning applies to a claim for contribution that originates from an action for medical negligence.

If the General Assembly intended for the medical malpractice two-year statute of limitations to "trump" the general three-year statute of limitations for purposes of a contribution claim, it could have created an express exception as it did with other causes of action. The General Assembly did not, however, include the medical malpractice statute of limitations as one of the exceptions to the general statute of limitations.[38] The fact that such an exception was not created reinforces the separateness of a claim for contribution from a cause of action for medical malpractice. A three-year statute of limitations separately governs contribution claims. Accordingly, we hold that Harbor Health's claim for contribution was timely filed.

### Evidence Established Causation

Dr. Reddy's other argument is that the Superior Court erred in denying his Motion for Judgment as a Matter of Law because Harbor Health failed to produce evidence that Ms. Spriggs would have received surgery clearance and authorization for the surgery prior to her death.[39]

Dr. Reddy argues that section 6853 of the Medical Malpractice Act requires a plaintiff to present expert testimony as to the consent of a patient to surgery. Section 6853(e) states that:

No liability shall be based upon asserted negligence unless expert medical testimony is presented as to the alleged deviation from the applicable standard of care in the specific circumstances of the case and as to the causation of the alleged personal injury of death ... [40]

In *Duphily v. Del. Elec. Coop. Inc.*, this Court stated:

Delaware recognizes the traditional "but for" definition of proximate causation. Our time-honored definition of proximate cause ... is that direct cause with-

37. *Royal Car Wash Co. v. Mayor and Council of Wilmington*, 240 A.2d 144, 145–46 (Del.Super.Ct.1968) (internal citations omitted).

38. *See* Del.Code Ann. tit. 10, § 8106(a) (... shall be brought after the expiration of 3 years from the accruing of the cause of such action; subject, however, to the provisions of §§ 8108–8110, 8119 and 8127 of this title).

39. It should be noted that in Dr. Reddy's Opening Brief, it appears that Dr. Reddy is arguing that expert evidence should have been presented regarding whether Ms. Spriggs would have been authorized and cleared for surgery. However, in Dr. Reddy's Reply Brief, he states that this is not his argument, instead claiming that there was no evidence presented on the issue. This analysis addresses the argument raised in the Reply Brief.

40. Del.Code Ann. tit. 18, § 6853.

out which [an] accident would not have occurred. In other words, a proximate cause is one which in natural and continuous sequence, *unbroken by any efficient intervening cause,* produces the injury and without which the result would not have occurred.[41]

Proximate cause is to be "determined, on the facts, upon mixed considerations of logic, common sense, justice, policy, and precedent. Implicit in the trial court's conclusion is the finding that the accident would not have occurred if the plaintiff had kept a proper lookout." [42]

Dr. Reddy argues that there is no causal connection between his conduct and Ms. Spriggs' deteriorating condition because there is no proof that the proposed surgery would have occurred. Dr. Reddy relies on Ms. Spriggs' factual circumstances in 1998 and that no one from the District of Columbia testified whether the surgery would have been approved. Dr. Dabney stated that he would have recommended surgery when Ms. Spriggs' spine reached a sixty degree curvature, which would have been somewhere around 1995–1996. Consequently, the appropriate time period at issue is 1995–1996.

Harbor Health presented expert testimony that Dr. Reddy breached the applicable standard of care by not returning Ms. Spriggs to duPont every six months and by failing to develop a strategy "for dealing with the scoliosis that simply would have been of a nature to have at least reminded him that she has an ongoing chronic problem and to have that eval-

uated periodically to make sure that it was dealt with before it became a much more serious problem." Expert testimony was also presented that these failures proximately caused injury to Ms. Spriggs and that Ms. Spriggs suffered from such failures.

There was sufficient expert testimony presented at trial to support a finding that had the correct treatment been recommended, that treatment would have been approved at the appropriate time. This conclusion is supported by the record, which indicates that Ms. Spriggs had a tracheosectomy repair and her hip socket removed in 1997. From this evidence, without any additional expert testimony, the jury could reasonably find that if Dr. Reddy had returned Ms. Spriggs to duPont every six months, the surgery on her spine would have been recommended and approved during the 1995–1996 period. Accordingly, there was sufficient record evidence to support the jury's determination that the failure to have corrective surgery performed was proximately caused by Dr. Reddy's negligent conduct.

### *Conclusion*

For the foregoing reasons, the judgment of the Superior Court is affirmed.

---

**41.** *Duphily v. Del. Elec. Coop. Inc.,* 662 A.2d 821, 828–829 (Del.1995) (internal citations and quotations omitted) (ellipsis and emphasis in original).

**42.** *Chudnofsky v. Edwards,* 208 A.2d 516, 518 (Del.1965) (internal citations omitted).