IN THE SUPREME COURT OF THE STATE OF DELAWARE

MARIO DE LOS SANTOS, §
§
    Plaintiff Below, § No. 437, 2024
    Appellant, §
§ Court Below: Superior Court
    v. § of the State of Delaware
§
ALLSTATE PROPERTY AND § C.A. No. N22C-08-418
CASUALTY INSURANCE §
COMPANY and STATE FARM §
MUTUAL AUTOMOBILE §
INSURANCE COMPANY, §
§
    Defendants Below, §
    Appellees. §

Submitted: April 30, 2025
Decided: July 25, 2025

Before **SEITZ**, Chief Justice; **VALIHURA** and **GRIFFITHS**, Justices.

## ORDER

The Court, having considered the briefs and the record below, and after oral argument, rules as follows:

(1) While driving his car, Mario De Los Santos was hit by an uninsured motorist. He asked his car insurance providers, State Farm Mutual Automobile Insurance Company and Allstate Property and Casualty Insurance Company, to cover his injuries and medical costs. Each carrier claimed that De Los Santos was

uninsured on the day of the accident. The Superior Court agreed and granted summary judgment to both carriers.

(2) On appeal, De Los Santos argues that State Farm violated statutory law by canceling his policy before verifying that he had replacement coverage. He also argues that Allstate may have prevented the payment of his premium that led to his policy being voided. After careful review, we find that the insurance statute did not require State Farm to verify replacement coverage before canceling his policy. But whether Allstate caused the nonpayment of his insurance premium raised a genuine issue of material fact that must be resolved at trial. Accordingly, we affirm the court's judgment in favor of State Farm and reverse the judgment in favor of Allstate.

*Facts*

(3) We recite the facts in a light most favorable to De Los Santos.[1] A State Farm car insurance policy covered De Los Santos from September 27, 2021, to March 27, 2022.[2] After State Farm increased the premium, De Los Santos decided to change his insurance carrier to Allstate.[3]

---

[1] *See Enrique v. State Farm Mut. Auto. Ins. Co.*, 142 A.3d 506, 511 (Del. 2016) ("The facts of record, including any reasonable hypotheses or inferences to be drawn therefrom, must be viewed in the light most favorable to the non-moving party." (quoting *Williams v. Geier*, 671 A.2d 1368, 1375 (Del. 1996))).

[2] App. to Appellant's Opening Br. at A122 [hereinafter A__] (State Farm auto renewal notice, Aug. 20, 2021).

[3] A50–51 (Tr. 45–46, De Los Santos Dep.).

(4)     On September 28, 2021, De Los Santos visited Powell Insurance Agency, Inc., to apply for an Allstate policy.[4] He provided the agent with a check to pay the initial insurance premium.[5] The agent took the check from him and put it on her desk to record the information.[6] De Los Santos authorized Allstate to pay the premium and requested that the policy begin on October 5.[7] He also authorized monthly withdrawals from his Citizens Bank account to pay for future policy premiums.[8]

(5)     Allstate then attempted to charge De Los Santos for the premium, but the charge was returned unpaid.[9] The account that Allstate charged ended in x4315, which De Los Santos testified he did not recognize.[10] Allstate did not attempt to

---

[4] *See* A82 (Allstate insurance application, Sept. 28, 2021) ("Agent/Agency Name: PROVEY POWELL JR").

[5] A54 (Tr. 61, De Los Santos Dep.).

[6] A55 (Tr. 62, De Los Santos Dep.).

[7] A85 (Allstate notice of payment authorization, Sept. 29, 2021); A82 (Allstate insurance application, Sept. 28, 2021).

[8] A267 (Allstate confirmation of monthly payment plan, Sept. 29, 2021).

[9] Allstate notified De Los Santos that it would charge the recorded account "as early as 10/1/2021." A85 (Allstate notice of payment authorization, Sept. 29, 2021). Allstate sent a notice of nonpayment on October 5. A87 (Allstate notice of nonpayment, Oct. 5, 2021). Although Allstate attempted to charge the account between October 1 and 5, the record is unclear on what date the attempt was made.

[10] A85 (Allstate notice of payment authorization, Sept. 29, 2021); A54 (Tr. 60, De Los Santos Dep.).

charge the Citizens Bank account that De Los Santos had provided for monthly payments.

(6)    On October 4, De Los Santos visited David Soleye Insurance Agency, Inc., to cancel his State Farm policy.[11]  He requested that the State Farm policy end on October 5.[12]  State Farm accepted his cancellation request and terminated the policy on October 5.[13]  State Farm also processed a scheduled premium payment that day.[14]  State Farm later informed De Los Santos that the policy was canceled as requested, but that State Farm could not refund his premium until he submitted a cash refund affidavit.[15]  Once De Los Santos submitted the form, State Farm issued a refund check.[16]

(7)    On October 7, an uninsured motorist drove into the back of De Los Santos's car, injuring him.  That day, State Farm sent him a cancellation notice that marked October 5 as the end date of his policy.[17]  The next day, Allstate voided De

---

[11] A120 (State Farm cancellation record).

[12] A57 (Tr. 71–73, De Los Santos Dep.).

[13] A120 (State Farm cancellation record).

[14] A275 (State Farm customer billing page for De Los Santos, Oct. 5, 2021).

[15] A294 (State Farm cash refund notice, Oct. 14, 2021).

[16] A296–97 (State Farm cash refund affidavit & refund check).

[17] A280 (State Farm acknowledgement of cancellation request, Oct. 7, 2021).

Los Santos's policy for nonpayment.[18]  Allstate's cancellation was declared retroactive to the policy's issue date – October 5.[19]

(8)  On October 11, De Los Santos visited Powell Insurance again to apply for an Allstate policy.[20]  To pay for the premium on the new policy, he provided the same check he had given in his first visit.[21]  This time, Allstate charged De Los Santos's account without any issues.[22]  The policy began on October 18 as De Los Santos requested.

(9)  De Los Santos asked State Farm and Allstate to provide uninsured motorist coverage for the October 7 car accident.  Both carriers denied coverage.  De Los Santos then filed suit in the Superior Court against State Farm and Allstate, seeking damages for injuries and medical expenses arising from the car accident.  After discovery, both carriers moved for summary judgment.

(10)  The court granted summary judgment to State Farm and Allstate.  The court rejected De Los Santos's argument that the purpose of Title 18, Section 3915 of the Delaware Insurance Code was to ensure that an insured had valid coverage

---

[18] A77 (Aff. of Allstate Emp. Thompson-McKenna).

[19] A291 (Allstate notice of voided coverage, Oct. 12, 2021).

[20] A56 (Tr. 66, De Los Santos Dep.).

[21] *Id.* (Tr. 67, De Los Santos Dep.) ("Q. You took the exact same check with you? A. The same check. Q. Did you do it the same way you handed it to them? [sic] A. Yes.").

[22] *Id.* (Tr. 68, De Los Santos Dep.).

when switching to a new carrier.[23]  The court reasoned that Section 3915 was about the "demand of a cash refund."[24]  The court also found that "failure to pay a premium is grounds to cancel a policy."[25]  Furthermore, it held that De Los Santos's argument that Allstate caused the premium to go unpaid was "unsupported by any evidence."[26]

(11)  De Los Santos appeals the Superior Court's summary judgment rulings. He claims that the court misinterpreted Section 3915 to allow State Farm to cancel his policy without verifying that he had replacement insurance.  He also claims that the cause of the failed Allstate premium payment was a disputed issue of material fact to be resolved at trial.  We review the Superior Court's grant of summary judgment *de novo*.[27]  We also review issues of statutory construction *de novo*.[28]

*State Farm*

(12)  When interpreting a statute, our goal is to determine and give effect to the intent of the legislature "as expressed in the statute."[29]  We first "examine the

---

[23] Ex. A, Order, *De Los Santos v. Allstate Prop. & Cas. Ins. Co.*, N22C-08-418, at *2 (Del. Super. Ct. Oct. 1, 2024) [hereinafter *Summ. J. Order*].

[24] *Id.*

[25] *Id.*

[26] *Id.*

[27] *Richards v. Copes-Vulcan, Inc.*, 213 A.3d 1196, 1199 (Del. 2019).

[28] *McGuiness v. State*, 312 A.3d 1156, 1200 (Del. 2024).

[29] *Wells Fargo Bank, N.A. v. Est. of Malkin*, 278 A.3d 53, 64 (Del. 2022) (quoting *Noranda Aluminum Holding Corp. v. XL Ins. Am., Inc.*, 269 A.3d 974, 978 (Del. 2021)).

text of the statute to determine if it is ambiguous."[30]  A statute is ambiguous if it is reasonably susceptible to different interpretations or if a literal interpretation of its text creates an absurd result unintended by the legislature.[31]  We may "look behind the statutory language itself only if the statute is truly ambiguous."[32]  If the statute is unambiguous, "the plain meaning of the statutory language controls."[33]  Our role is then limited to applying the "literal meaning of the statute's words."[34]

(13)   Title 18, Section 3915 provides in relevant part:

(a) No insurer shall honor a request for a cash refund on cancellation of a policy by the insured until such time as the insured has provided sufficient evidence to the insurer that one of the following has occurred:

(1) The insured has other insurance in effect which provides at least . . . minimum insurance coverage . . . .[35]

De Los Santos contends that the Superior Court "undermine[d]" the purpose of Section 3915 by narrowly interpreting it to cover only "the demand of a cash

---

[30] *Leatherbury v. Greenspun*, 939 A.2d 1284, 1288 (Del. 2007) (citing *Newtowne Vill. Serv. Corp. v. Newtowne Road Dev. Co.*, 772 A.2d 172, 175 (Del. 2001)).

[31] *Wilkerson v. State*, 2025 WL 39625, at *7 (Del. Jan. 7, 2025) (citing *Arnold v. State*, 49 A.3d 1180, 1183 (Del. 2012)).

[32] *Wilkerson*, 2025 WL 39625, at *7 (quoting *In re Port of Wilm. Gantry Crane Litig.*, 238 A.3d 921, 927 (Del. Super. Ct. 2020)); *see Noranda*, 269 A.3d at 978 ("If there is a legitimate ambiguity, we consult the canons of statutory construction and may consider legislative history.").

[33] *Protech Mins., Inc. v. Dugout Team, LLC*, 284 A.3d 369, 375 (Del. 2022) (quoting *Eliason v. Englehart*, 733 A.2d 944, 946 (Del. 1999)).

[34] *Wilkerson*, 2025 WL 39625, at *7 (quoting *Arnold*, 49 A.3d at 1183).

[35] 18 *Del. C.* § 3915.

refund."[36]  He also claims that the court's reading of Section 3915 produces an absurd result.[37]  He interprets Section 3915 to require that an insurer verify that an insured has "active replacement coverage" before canceling a policy.[38]  Therefore, De Los Santos argues, summary judgment was improper because State Farm canceled his policy before confirming that Allstate provided replacement coverage.

(14)  De Los Santos's argument is unpersuasive for two reasons.  First, his interpretation contravenes the statute's clear text.  Section 3915 requires an insurer to verify an insured's replacement coverage before "honor[ing] . . . a *cash refund on cancellation of a policy*."[39]  De Los Santos's reading – requiring an insurer to verify replacement coverage before canceling a policy – renders the language "cash refund on" surplusage.[40]

(15)  Despite this, De Los Santos contends that his reading is correct because it implements the General Assembly's intent to "prevent coverage gaps" and "reduce

---

[36] Appellant's Opening Br. on Appeal at 10 [hereinafter Opening Br.]; *Summ. J. Order* at *2.

[37] *See* Oral Argument at 10:20, *De Los Santos v. Allstate Prop. & Cas. Ins. Co.*, No. 437, 2024 (Del. Apr. 30, 2025) [hereinafter Oral Argument], https://vimeo.com/1078004721?fl=pl&fe=vl ("[T]hat narrow reading of . . . 3915, which certainly the lower court adopted and is the . . . reading that is set forth in the briefs by . . . State Farm, I think it produces some absurd results.").

[38] Opening Br. at 10.

[39] 18 *Del. C.* § 3915(a) (emphasis added).

[40] *See Taylor v. Diamond State Port Corp.*, 14 A.3d 536, 538 (Del. 2011) ("We also ascribe a purpose to the General Assembly's use of statutory language, construing it against surplusage, if reasonably possible." (citing *Dewey Beach Enters., Inc. v. Bd. of Adjustment of Dewey Beach*, 1 A.3d 305, 307 (Del. 2010))).

the number of uninsured drivers."[41]  But in the absence of ambiguity, the statute's text "must be regarded as conclusive of the legislature's intent."[42]  Here, De Los Santos does not offer a reasonable alternative interpretation of Section 3915 that makes the statute ambiguous.[43]

(16)  Second, the Superior Court's interpretation of Section 3915 does not lead to an absurd result.  De Los Santos argues that, under this interpretation, an insurer may keep a premium payment without providing coverage if an insured fails to submit proof of replacement insurance.  He claims that this result would contradict the General Assembly's intent to "prevent coverage gaps" and "reduce the number of uninsured drivers."[44]  Here, for example, this reading would allow State Farm to

---

[41] Appellant's Reply Br. at 4–5 [hereinafter Reply Br.].

[42] *Grand Ventures, Inc. v. Whaley*, 632 A.2d 63, 68 (Del. 1993); *see Gonzalez v. Devlin*, 792 A.2d 188 (Del. 2002) (TABLE) ("Where the intent of the General Assembly is clear from the language of the statute, there is no room for statutory interpretation." (citing *Giuricich v. Emtrol Corp.*, 449 A.2d 232, 238 (Del. 1982))).

[43] De Los Santos relies on *State Farm Mutual Automobile Insurance Co. v. Mundorf*, 659 A.2d 215 (Del. 1995), and *DiMenco v. Selective Insurance Co.*, 833 A.2d 984 (Del. Super. Ct. 2002), *aff'd*, 832 A.2d 1250 (Del. 2003) (TABLE), to argue that Delaware has a strong public policy of protecting consumers against lapses in insurance coverage.  As stated above, we need not review Delaware's public policy when applying the plain text of an unambiguous statute.  But even if we did, *Mundorf* and *DiMenco* are inapposite.  *Mundorf* reviewed whether an insurer is required to give notice when it declines to renew an insured's policy under an Assigned Risk Plan.  659 A.2d 215.  *DiMenco* reviewed whether a third-party insurance financer may send a notice of cancellation to an insured under 18 *Del. C.* § 4809.  833 A.2d 984.  Both cases address Delaware's public policy of protecting insureds by requiring insurers to provide adequate notice when insurers cancel coverage.  De Los Santos does not claim that State Farm failed to provide him adequate notice of cancellation.

[44] Reply Br. at 4–5.

cancel De Los Santos's policy, hold the premium for his canceled policy, and not provide coverage for the October 7 accident. Because we avoid "patent absurdity" when interpreting statutes, De Los Santos argues that we should reject this reading of Section 3915.[45]

(17) But, assuming De Los Santos's description of legislative intent is accurate, the Superior Court's reading of Section 3915 does not contradict it. If an insured fails to obtain replacement insurance, she forfeits the premium held by the insurer. By requiring insurers to withhold cash refunds until they verify replacement insurance, consumers are encouraged to obtain replacement insurance. This in turn may reduce the number of uninsured motorists in Delaware. Our interpretation does not yield "illogical or absurd results" that are "manifestly contradictory to common reason."[46]

(18) Accordingly, we need not look beyond the plain meaning of the text to implement the legislature's intent. Section 3915 regulates when an insurer may refund an insured's premium, not whether an insurer may cancel an insured's policy. Here, State Farm complied with Section 3915 by withholding De Los Santos's

---

[45] *See Doroshow, Pasquale, Krawitz & Bhaya v. Nanticoke Mem'l Hosp., Inc.*, 36 A.3d 336, 343 (Del. 2012) ("We read statutes by giving language its reasonable and suitable meaning while avoiding 'patent absurdity.'" (citation omitted)).

[46] *State v. Cooper*, 575 A.2d 1074, 1075 (Del. 1990); *Reddy v. PMA Ins. Co.*, 20 A.3d 1281, 1288 (Del. 2011) (quoting 1 William Blackstone, *Commentaries* *91).

refund until it received proof of replacement insurance. We affirm the Superior Court's grant of summary judgment to State Farm.

*Allstate*

(19) When reviewing a summary judgment decision, this Court applies the same standard as the trial court.[47] Summary judgment is granted if the evidence, including depositions, shows that there is no genuine issue of material fact and the movant is entitled to a judgment as a matter of law.[48] We review the record to determine whether, considering the facts and inferences in the light most favorable to the nonmovant, a genuine dispute of material fact exists.[49] "If material issues of fact exist or if a court determines that it does not have sufficient facts to enable it to apply the law to the facts before it, then summary judgment is inappropriate."[50]

(20) Whether De Los Santos or Allstate caused the nonpayment of the first Allstate premium raised a genuine issue of material fact. De Los Santos testified in his deposition that he gave a check to the Powell Insurance agent. The agent took the check to record his account information. Later, Allstate charged an account

[47] *Paul v. Deloitte & Touche, LLP*, 974 A.2d 140, 145 (Del. 2009) (citing *Berns v. Doan*, 961 A.2d 506, 510 (Del. 2008)).

[48] Super. Ct. Civ. R. 56(c).

[49] *GMG Ins. Agency v. Edelstein*, 328 A.3d 302, 309 (Del. 2024) (citing *Jones v. Crawford*, 1 A.3d 299, 301–02 (Del. 2010)).

[50] *Wilm. Tr., Nat'l Ass'n v. Sun Life Assurance Co. of Canada*, 294 A.3d 1062, 1071 (Del. 2023) (quoting *Motorola, Inc. v. Amkor Tech., Inc.*, 849 A.2d 931, 935 (Del. 2004)).

number that De Los Santos did not recognize. This raises two possibilities – De Los Santos's account number was either misprinted on the check or improperly recorded by the agent. But De Los Santos also testified that he provided the same check during his second visit to pay for the new premium.[51] As that payment was processed without error, it is unlikely that the check had an incorrect account number. On this limited factual record, a reasonable inference is that the agent improperly recorded De Los Santos's account information. Thus, viewing the facts in a light most favorable to De Los Santos, Allstate likely caused the premium charge to return unpaid.[52]

(21) Allstate argues that no insurance statute in Delaware "require[s] insurance coverage when the premium was not paid."[53] But Allstate "may not escape contractual liability" by relying on the failure of a condition precedent after the party "wrongfully prevented performance of that condition precedent."[54] Here,

---

[51] A56 (Tr. 67, De Los Santos Dep.).

[52] During oral argument, Allstate contested whether Powell Insurance was its agent. *See, e.g.*, Oral Argument at 17:36 (arguing that Powell is an "agent[] in some fashion" of Allstate). Allstate did not raise this issue with the Superior Court or in briefing to this Court. Under our rules, Allstate waived this argument. Supr. Ct. R. 14(b)(vi)(A)(3) ("The merits of any argument that is not raised in the body of the opening brief shall be deemed waived and will not be considered by the Court on appeal.").

[53] Corrected Answering Br. by Appellee Allstate Prop. & Cas. Ins. Co. at 11.

[54] *BitGo Hldgs., Inc. v. Galaxy Digital Hldgs., Ltd.*, 319 A.3d 310, 333 (Del. 2024) (quoting *Mobile Commc'ns Corp. of Am. v. MCI Commc'ns Corp*, 1985 WL 11574, at *4 (Del. Ch. Aug. 27, 1985)); *see* 13 Richard A. Lord, *Williston on Contracts* § 39:6 (updated 4th ed. 2025) ("[T]he [prevention]

the facts reviewed in the light most favorable to De Los Santos support his argument that Allstate prevented the insurance premium from being paid. If so, Allstate cannot use the nonpayment of the premium to evade its obligation to provide uninsured motorist coverage to De Los Santos.

NOW, THEREFORE, IT IS HEREBY ORDERED that the judgment of the Superior Court is AFFIRMED in part, REVERSED in part, and REMANDED to the Superior Court for further proceedings consistent with this Order. Jurisdiction is not retained.

BY THE COURT:

*/s/ Collins J. Seitz, Jr.*
Chief Justice

---

doctrine is based on the long-established principle of law that a party should not be able to take advantage of its own wrongful act.").