**CHASE ALEXA, LLC, Petitioner Below, Appellant,**

**v.**

**KENT COUNTY LEVY COURT, the governing body of Kent County, Delaware; Allan F. Angel, P. Brooks Banta, Bradley S. Eaby, Eric L. Buckson, W.G. Edmanson II, Harold K. Brode, and Richard E. Ennis, in their official capacities as members of the Kent County Levy Court; Kent County Regional Planning Commission, an agency of the government of Kent County, Delaware; Albert W. Holmes, Jr., Kenneth Edwards, Denise Kaerch-er, William Jester, Gene Thornton, Paul Davis and Clifton Coleman, Jr., in their official capacities as members of the Kent County Regional Planning Commission, Respondents–Below, Appellees.**

**No. 522, 2009.**

Supreme Court of Delaware.

Submitted: Jan. 20, 2010.
Decided: March 23, 2010.

William E. Manning, Esquire (argued), Richard A. Forsten, Esquire and James D. Taylor, Jr., Esquire, Saul Ewing LLP, Wilmington, Delaware, for Appellant.

Joseph Scott Shannon, Esquire (argued) and Artemio C. Aranilla, Esquire, Marshall Dennehey Warner Coleman & Goggin, Wilmington, Delaware, for Appellees.

Before HOLLAND, BERGER and RIDGELY, Justices.

BERGER, Justice.

In this appeal we consider whether a land developer must comply with Kent County ordinances enacted after the developer began the County's approval process and after the developer had expended substantial sums in connection with the planned development. The Court of Chancery rejected the developer's three arguments. It held that the statute the developer relied on does not create a "safe harbor," and that the facts do not support the developer's claims of vested rights or equitable estoppel. Applying settled prin-

ciples of statutory construction, we conclude that the developer does not have to comply with the new ordinances because it satisfied the statute's six month requirement. Accordingly, we reverse without addressing the developer's other arguments.

### Factual and Procedural Background

In 2004, Chase Alexa, LLC agreed to purchase a 166–acre parcel of land in Kent County, Delaware, to develop as a residential subdivision called Winterberry Woods. In May 2005, Chase Alexa submitted its first concept plan and held a preliminary conference with Kent County land use officials. The developer also took steps to obtain sewer and water service. During the next 10 months, Chase Alexa met with land use planners, closed on the property, and paid various fees and other expenses totaling more than $700,000. In March 2006, Chase Alexa submitted a revised concept plan and held its second preliminary conference. In July 2006, the developer submitted its application for preliminary subdivision plan approval to the Kent County Planning Office. In September 2006, the Regional Planning Commission considered a Staff Recommendation Report and then voted to approve the preliminary plan.

While Chase Alexa was moving forward with its development plans, the Levy Court was in the process of amending its land use laws. On June 13, 2006, Commissioner Banta introduced four "Adequate Public Facilities Ordinances" (APFOs) "intended to ensure that essential public facilities needed to support new development meet or exceed the Level of Service standards established [by the APFOs]."[1] The APFOs addressed central water, emergen-

cy medical services, school capacity, and traffic. The new ordinances were enacted at various times between October 2006 and March 2007, but they provided that they would be effective retroactively to the date on which they were introduced.

Chase Alexa was aware of the new ordinances, but it believed that the APFOs would not apply to the Winterberry Woods development. In April 2007, shortly after County officials advised otherwise, Chase Alexa filed this action against Kent County Levy Court, Kent County Regional Planning Commission, and their members.[2] The developer also continued to obtain approvals needed to file its final subdivision plan. The trial court noted that, if Chase Alexa's position were correct, it would have been ready for final subdivision approval in early 2008. In April 2009, the Court of Chancery decided cross-motions for summary judgment in favor of Kent County. This appeal followed.

### Discussion

■ Chase Alexa argues that, under Kent County Code § 187–17(D), it should not be subject to the APFOs because it filed its preliminary application within six months of its preliminary conference. The statute provides, in relevant part:

§ 187–17. Preliminary conference.

A. Before undertaking the preparation of a major subdivision plat, the applicant shall consult with the Commission's staff to discuss ... site-specific planning opportunities and constraints, ... and to determine the zoning regulations and other requirements relating to or affecting the proposed subdivision....

B. The applicant for a subdivision is encouraged to also consult with the

---

1. Appellant's Appendix, A–085.

2. Appellees are referred to collectively as Kent County except where the context requires distinctions.

Kent County Public Works Department, the Kent Conservation District, the Delaware Department of Transportation....

C. The purpose of these consultations is to assist the applicant by furnishing information and advice, expedite the application process ... and promote the best coordination between the plans of the applicant and those of the Kent County Comprehensive Plan and other public agencies. *D. The preliminary application must be submitted within six months of the preliminary conference meeting or another preliminary conference will be required and the project must meet all current standards.*[3]

Chase Alexa argues that the plain language of § 187–17(D) protects a project from having to comply with any changes in statutes or regulations after the date of the preliminary conference, as long as the preliminary application is filed within six months of the preliminary conference. If the preliminary application is not filed within six months, then, and only then, "another preliminary conference will be required and the project must meet all current standards." Alternatively, if the statute is deemed ambiguous, Chase Alexa says that its interpretation should prevail because ambiguous zoning laws must be construed in favor of the landowner.

Kent County argues that the developer's reading leads to an absurd result because it deprives "the [Regional Planning Commission] and Levy Court of their discretion to adopt progressive zoning regulations in the public interest and apply them to applications pending *their* review" at a later stage of the approval process.[4] In addition, Kent County contends that the statute should not be construed to provide a safe harbor by its silence. Section 187–17(D) states that applicants who do not submit a preliminary plan within six months of the preliminary conference will have to start anew and will be subject to any laws that may take effect in the interim. The statute does not expressly provide that applicants who meet the six month requirement will not be subject to any new laws. Kent County says that courts should not draw inferences based on the statute's failure to address this point.

■■■ The rules of statutory construction are designed to ascertain and give effect to the intent of the legislators, as expressed in the statute.[5] First, the Court must determine whether the statute is ambiguous, because if it is not, then "the plain meaning of the statutory language controls."[6] The fact that the parties disagree about the meaning of the statute does not create ambiguity.[7] Rather, a statute is ambiguous only if it is reasonably susceptible of different interpretations.[8]

We conclude that § 187–17(D) is plain and unambiguous. It requires that the preliminary application be submitted within six months after the preliminary conference. The statute goes on to address the consequences of failing to meet the six month time frame. Applicants in that category must attend another preliminary

---

**3.** Kent County Code § 187–17 (Emphasis added.).

**4.** Appellees' Answering Brief, 27.

**5.** *Mayor and Council of Wilmington v. Dukes,* 157 A.2d 789, 793 (Del.1960).

**6.** *Director of Revenue v. CNA Holdings, Inc.,* 818 A.2d 953, 957 (Del.2003).

**7.** *Centaur Partners, IV, v. National Intergroup, Inc.,* 582 A.2d 923, 927 (Del.1990).

**8.** *Ibid.*

conference, and their projects must meet all current standards. Because the statute only requires applicants who miss the six month deadline to attend another preliminary conference and comply with current standards, it follows that applicants who meet the six month deadline need only comply with the standards in effect at the time of their preliminary conference.

■■ Read any other way, the statute would not make sense. If all applicants have to comply with current laws, then the last phrase of the statute—"and the project must meet all current standards"—is surplusage. "[W]ords in a statute should not be construed as surplusage if there is a reasonable construction which will give them meaning, and courts must ascribe a purpose to the use of statutory language, if reasonably possible." [9] Kent County does not offer an interpretation of the statute that explains the "all current standards" language.

■ Even if the statute were deemed ambiguous, Chase Alexa's interpretation would prevail. Statutes must be construed as a whole, in a way that gives effect to all of their provisions and avoids absurd results. [10] If possible, arguably conflicting provisions should be harmonized. [11] Finally, as noted above, if there are two reasonable interpretations of the statute, the interpretation that favors the landowner controls. [12]

The process of obtaining subdivision approval takes time, and the Subdivision and Land Development provisions of the Kent County Code address timing issues. At the beginning of the process, there is the six month requirement at issue here. The preliminary application must be submitted within six months of the preliminary conference, *or* there must be another preliminary conference and the project must meet current standards. [13] If the Regional Planning Commission approves a preliminary plan, that approval is valid for 18 months, and plans must be approved by the Levy Court and recorded within 24 months of preliminary approval. [14] Finally, construction must begin within five years from the date the plan was recorded. [15] If a landowner fails to begin construction within five years, the plan must be reviewed, and it must be found to comply with then current standards. [16] In short, at specific points in the development process, if the landowner has not taken the required steps, the landowner must obtain a new approval and be subject to any new laws.

We are not unmindful of the requirement in § 187–24(F), which provides that, at the end of the process, the Levy Court "shall ... determine the plan's consistency with applicable codes and regulations of the County." Kent County urges the Court to read this provision as requiring the Levy Court to compare the plan to the laws in effect at the time of the Levy Court's review. But the statute says that the Levy Court shall determine whether the plan is consistent with "applicable" codes, not current codes. This provision can be harmonized with the other land use

**9.** *Oceanport Industries, Inc. v. Wilmington Stevedores, Inc.,* 636 A.2d 892, 900 (Del.1994) (Citations omitted.).

**10.** *LeVan v. Independence Mall, Inc.,* 940 A.2d 929, 933 (Del.2007).

**11.** *State v. 0.0673 Acres of Land,* 224 A.2d 598, 602 (Del.1966).

**12.** *Mergenthaler v. State,* 293 A.2d 287, 288 (Del.1972).

**13.** Kent County Code § 187–17(D).

**14.** Kent County Code § 187–21(F).

**15.** Kent County Code § 187–14(B).

**16.** Kent County Code § 187–14(G)(2).

statutes by reading "applicable codes" to mean the laws that governed at the time of the preliminary conference, when the process began. Because this is a reasonable reconciliation of the arguable conflict in the statutes, and because it favors the landowner, if the statute were deemed ambiguous we still would adopt Chase Alexa's interpretation.

### Conclusion

Based on the foregoing, the judgment of the Court of Chancery is REVERSED and this matter is remanded for further action in accordance with this decision. Jurisdiction is not retained.