# IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| JACK LINGO ASSET MANAGEMENT, LLC, and SUSSEX EXCHANGE PROPERTIES, LLC, FBO LINGO BROTHERS, LLC | § § § § § § | No. 292, 2021 Court Below: Superior Court of the State of Delaware C.A. No. S20A-05-001 |
| Petitioners Below, Appellants, | § § § | |
| v. | § § | |
| THE BOARD OF ADJUSTMENT OF THE CITY OF REHOBOTH BEACH, DELAWARE | § § § § § | |
| Respondent Below, Appellee. | § § | |

Submitted: April 27, 2022
Decided: July 19, 2022

Before **VALIHURA**, **TRAYNOR**, and **MONTGOMERY-REEVES**, Justices.

Upon appeal from the Superior Court. **REVERSED**.

David C. Hutt, Esquire, R. Eric Hacker, Esquire (*argued*), Michelle G. Bounds, Esquire, MORRIS JAMES LLP, Georgetown, Delaware, *for Petitioners Below/Appellants Jack Lingo Asset Management and Sussex Exchange Properties.*

Frederick A. Townsend, III, Esquire (*argued*), D. Barrett Edwards, IV, Esquire, HUDSON, JONES, JAYWORK & FISHER LLC, *for Respondent Below/Appellee Board of Adjustment of the City of Rehoboth Beach, Delaware.*

**TRAYNOR**, Justice:

Jack Lingo Asset Management ("Lingo") owns and occupies the property at 240 Rehoboth Avenue in Rehoboth Beach, Delaware. The second story only covers a portion of the first, leaving a flat roof over the rest of the ground floor. In 2018, Lingo wanted to convert the second floor from residential to office space. As part of this project, it sought permission from the City of Rehoboth Beach (the "City") to build an unroofed, railed walkway extending from the second floor over the flat roof to a stairway leading down to Christian Street. The exit walkway would not be visible from the main thoroughfare.

The City denied Lingo's application. It determined that the railings surrounding the walkway would technically expand the Gross Floor Area (or "GFA") of 240 Rehoboth Avenue under Section 270 of the Code of Rehoboth Beach (the "Zoning Code"). This expansion in GFA would, in turn, require Lingo to provide an additional parking spot, which it had no room to do. Lingo appealed the denial. The Board of Adjustment of the City of Rehoboth Beach affirmed in two decisions, and the Superior Court agreed.

We reverse. The Rehoboth Zoning Code in effect at the time of Lingo's application did not clearly and unambiguously establish that the proposed egress structure would increase the Gross Floor Area of 240 Rehoboth Avenue. Applying

2

our settled canon that zoning ambiguities be construed in the property owner's favor, we vacate the Board's decision.

I

A

In October 2018, Lingo sought permission to convert the second floor of 240 Rehoboth Avenue from residential space to office space.[1] Lingo's initial application was for a 25' x 25' deck on top of the first floor of the property.[2] In November 2018, the City approved the permit.[3] Instead of proceeding with construction, Lingo changed course and eventually settled on a smaller rooftop walkway that the City's building inspector described as "a general means of egress made up of an exterior exit access (deck) to an exit (stairs) and exit discharge (bottom of stairs)."[4] This decision refers to Lingo's final proposal as the Lingo Proposal or the "egress structure."

The City rejected the Lingo Proposal on June 10, 2019.[5] In an email to Lingo, the City's building inspector explained that "the proposed 2nd level egress walkway is an increase in size requiring one (1) additional parking space as provided under the City of Rehoboth Beach, Zoning Section 270.29B."[6] Because "there is no room

---

[1] App. to Answering Br. at B24.
[2] *Id.*
[3] *Id.*
[4] App. to Opening Br. at A151.
[5] *Id.* at A146.
[6] *Id.*

3

on the property for the new (additional) parking space," Lingo appealed the City's permit denial and, in the alternative, sought a variance from the parking-spot requirement.[7]

B

The Board issued two decisions denying Lingo's appeal. At issue in each was Section 270-04 of the Zoning Code, which then provided in pertinent part that Gross Floor Area is "[t]he sum of the gross horizontal areas of the several floors of a building measured from the exterior face of the exterior walls[.]" The City has since amended the Zoning Code, and it now specifies that porches, decks, and exterior stairwells contribute to Gross Floor Area.[8] This decision applies the version of the Zoning Code that was in effect when Lingo sought its permit.

Relying on the old version of the Zoning Code before the Board, Lingo argued that its proposed egress structure did not increase Gross Floor Area because, although it was enclosed by a railing, it was outside the building's exterior walls.[9] The Board disagreed and, on September 23, 2019, voted 5-0 "to uphold the [City's] determination that the deck enclosed by the railing makes for additional GFA because the railing constitutes an exterior wall."[10] The Board also voted 3-2 to deny

---

[7] App. to Opening Br. at A141–42.
[8] Answering Br. at 14 n.56.
[9] App. to Opening Br. at A19.
[10] *Id.* at A21.

Lingo's request for a variance from the parking spot requirement.[11]  The Board acknowledged that "the proposed structure in question would serve as a walkway, not as a gathering place[.]"[12]

After the Board's first decision in this case, the City published the following "Building & Licensing Notice" on its website:

> Property Owners, Contractors and Design Professionals note that enclosed spaces of decks, balconies, and porches will be counted as contributing to the sum of gross floor area (GFA) for purposes of calculating floor area ratio (FAR).  The floor area ratio (FAR) is the relationship between the total amount of floor area that a building has or has been permitted to have and the total area of the lot on which the building stands.
>
> The City of Rehoboth Beach Board of Adjustment on September 23, 2019, upheld the Building Inspector's interpretation to include the square footage of such structures for computing gross floor area (GFA).  *Plans submitted prior to September 24, 2019, will be reviewed to [the] previous code interpretation.*[13]

In response, Lingo petitioned the Board for re-hearing, arguing that "[s]ince [Lingo's] application was submitted prior to September 24, 2019[,] the Board and [City] should apply 'the previous code interpretation,' . . . *i.e.,* that deck railings do not constitute 'exterior walls[.]'"[14]  In its rebuttal to Lingo's petition, the City acknowledged that recent residential inspections "ha[d] not included the outdoor

---

[11] *Id.*
[12] *Id.* at A20.
[13] *Id.* at A206 (emphasis added).
[14] *Id.* at A212.

5

areas with enclosures in the calculation of gross floor area," but maintained that commercial inspections had generally done so.[15] The failure of the Building & Licensing Department's notice to identify this distinction between commercial and residential inspections was, according to the City, "an oversight."[16] So, too, the City said, was its approval of Lingo's initial application for a 25' x 25' deck.[17]

In April 2020, the Board issued its decision on re-hearing, affirming the denial of Lingo's permit application.[18] Because Lingo specifically appealed this ruling, we refer to it as "the Decision" or the "Board's decision."[19] The Decision carried by a 3-2 vote, with those in favor citing various arguments in support of the City. Those opposed "were not persuaded" that the drafters of the Zoning Code "intended to include gross floor area square footages presented by open external staircases and decks" and concluded that "the code was ambiguous in this respect[.]"

## C

Lingo appealed the Board's decision to the Superior Court via the statutory writ of *certiorari*.[20] The court affirmed, agreeing with the City that "[a] building inspector could reasonably determine" that structures like Lingo's proposed exit walkway "qualify as buildings subject to GFA calculations because they are usually,

---

[15] *Id.* at A225.
[16] *Id.* at A234.
[17] App. to Answering Br.at B37–38.
[18] App. to Opening Br. at A24–26.
[19] *Id.* at A6.
[20] *Id.*; *22 Del. C.* § 328.

although need not be, roofed, walled, and built for permanent use."[21]  The court then determined that "the [Zoning] Code is reasonably susceptible to *one* interpretation— the inclusion of decks, porches, balconies, and staircases in the GFA calculations."[22]

## II

Our review of a decision by a Board of Adjustment "is limited to correction of errors of law and to determining whether or not substantial evidence exists on the record to support the Board's findings of fact and conclusions of law."[23]  This case concerns a claimed error of law: the Board's interpretation of the Zoning Code.[24]

## III

Our principles of statutory interpretation are well-settled: we aim "to ascertain and give effect to the intent of the legislators, as expressed in the statute."[25]  If the plain statutory text admits only one reading, we apply it.[26]  But we also recognize that statutes are not always drafted clearly.  So, when the statutory text is "reasonably susceptible" of different conclusions or interpretations, we normally consider

---

[21] *Jack Lingo Asset Mgmt., LLC v. Bd. of Adjustment of City of Rehoboth Beach,* 2021 WL 3661211, at *4 (Del. Super. Ct. Aug. 13, 2021).
[22] *Id.* at *5 (emphasis in original).
[23] *Snyder v. New Castle Cty.*, 135 A.3d 763, 2016 WL 1375393, at *2 (TABLE) (Del. 2016) (quoting *Janaman v. New Castle Cnty. Bd. of Adjustment*, 364 A.2d 1241, 1242 (Del. 1976)).
[24] Lingo also argues that the Board's decision was not supported by substantial evidence.  Because we vacate the Board's decision on statutory construction grounds, we have no occasion to reach this additional argument.
[25] *Noranda Aluminum Holding Corp. v. XL Ins. Am., Inc.*, 269 A.3d 974, 977 (Del. 2021) (citing *Dewey Beach Enters., Inc. v. Bd. of Adjustment of Town of Dewey Beach*, 1 A.3d 305, 307 (Del. 2020)); *see also Spintz v. Div. of Fam. Servs.*, 228 A.3d 691, 698 (Del. 2020).
[26] *Dir. of Revenue v. Verisign*, 267 A.3d 371, 378 (Del. Nov. 29, 2021) (citing *In re Port of Wilmington Gantry Crane Litig.*, 238 A.3d 921, 937 (Del. 2020));

extrinsic evidence, such as legislative history and any historical applications of the text at issue.[27] In the zoning context, however, we need not consider extrinsic evidence because we have long held that, when an ambiguity is present, "the interpretation that favors the landowner controls."[28]

Thus, in order to enforce its interpretation of the Zoning Code against Lingo, the Board must be able to defend its reading as the only reasonable construction. This the Board cannot do. As we explain in more detail below, the Zoning Code in effect when Lingo sought its permit did not define "exterior walls," and Lingo offers a common-sense, natural reading of the term that does not cover the railings at issue in its proposal. On the other hand, the Board proffers a reading that is strained at best. Because we resolve zoning ambiguities in favor of the property owner, the Board's decision must be reversed.

---

[27] *Judicial Watch v. Univ. of Del.*, 2021 WL 5816692, at *5 (Del. Dec. 6, 2021); *Chase Alexa, LLC, v. Kent Cnty. Levy Ct.*, 991 A.2d 1148, 1151 (Del. 2010).

[28] *Dewey Beach Enters.*, 1 A.3d at 310 ("[T]o the extent that there is any doubt as to the correct interpretation, that doubt must be resolved in favor of the landowner."); *Chase Alexa*, 991 A.2d at 1152 (citing *Mergenthaler v. State*, 293 A.2d 287, 288 (Del. 1972) ("[W]e must keep in mind that zoning laws are to be interpreted in favor of the occupants of the land.")); *Carl M. Freeman Assocs., Inc. v. Green*, 447 A.2d 1179, 1182 (Del. 1982) ("The [General Assembly] delegates authority to the [counties] to adopt zoning regulations. . . . Because zoning ordinances are in derogation of common law property rights, [there must be] strict compliance with the [legislated] procedures.") (quoting *Kalakowski v. Town of Clarendon*, 431 A.2d 478, 479 (Vt. 1981); *see* 83 Am. Jur. 2d Zoning and Planning § 5 ("Generally, land use statutes are in derogation of the common law, and their provisions must be strictly construed.").

A

Section 270-04 of the Zoning Code defined Gross Floor Area as, in pertinent part:

> The sum of the gross horizontal areas of the several floors of a building measured from the exterior face of the exterior walls or from the center line of a wall separating two attached buildings, including basements but not including any space where the floor-to-ceiling height is less than six feet, six inches[.][29]

The Zoning Code defined "wall" as, among other things, "[t]he vertical exterior surface of a building[.]"[30] And it defined "building" as "[a] structure, usually roofed, walled and built for permanent use, as for a dwelling or for commercial purposes."[31] Reading these defined terms together, "Gross Floor Area" aggregates the area of each floor of a "building" between its "exterior walls"; "walls" are, in this setting, the vertical side of a "building"; and a "building" is "usually roofed" and "built for permanent" residential and commercial use.

Lingo argues that the term "exterior walls"—which is not defined in the Zoning Code—"refers to those walls of a building that connect the floor to the

---

[29] App. to Answering Br. at B105. The Zoning Code defines the term as "Floor Area, Gross." For the reader's convenience, this decision refers to it as "Gross Floor Area," as the parties have.

[30] *Id.* at B108. Wall is also defined as "[a] structure of brick, masonry or similar materials erected so as to enclose or screen areas of land" and "[t]he vertical interior surfaces which serve to divide a building's space into rooms." *Id.* Because the GFA calculation evaluates the area "of the several floors of a building from the exterior face of the exterior walls," these other types of walls are not relevant to this appeal. It is our view, though, that the Lingo Proposal would not qualify as either, because is does not appear to be made of brick or stone and it does not create new rooms.

[31] *Id.* at B103.

ceiling (or the foundation to the roof) and that have at least one side facing outside the building," and that this plain meaning "does not include a deck or walkway railing."[32] We agree that, even though the Zoning Code did not define "exterior walls," the Zoning Code's other defined terms strongly suggest that the railings in Lingo's egress structure would not have qualified. For starters, it is difficult to see how the "general means of egress" proposed by Lingo counts as a "building." After all, Lingo's egress structure is not of the type that is "usually roofed"—indeed, the plans do not propose a roof—and neither party argues that it was to be "built for permanent use, as for a dwelling or for commercial purposes."[33] Instead, the Board acknowledges that "the proposed structure in question would serve as a walkway, not as a gathering place[.]"[34] In sum, we struggle to follow how Lingo's walkway railings may be fairly classified as "exterior walls" of a "building."

At least one generally accepted definition of "exterior walls" offers additional support for the proposition that the term, properly and naturally understood, refers to the outer surfaces of a building that connect floors to ceilings. The International Building Code ("IBC") defines "exterior wall" as "[a] wall, bearing or nonbearing, that is used as an enclosing wall for a building, other than a fire wall, and that has a

---

[32] Opening Br. at 2, 21.
[33] App. to Opening Br. at A147,
[34] *Id.* at A20.

10

slope of 60 degrees (1.05 rad) or greater with the horizontal plane."[35]  This definition plainly does not encompass the railings at issue in the Lingo Proposal; those railings do not enclose a building, but instead surround an exit walkway. [36]

In our view, Lingo offers a reasonable, intuitive reading of the critical term in this case: "exterior walls" may be naturally understood to refer to the outer surfaces of a building that connect floors to ceilings.  Understood in this way, the term does not fairly cover the walkway railing proposed by Lingo.

B

After previously interpreting "exterior walls" similarly to how Lingo does in this appeal,[37] the Board now maintains that "[t]he plain language of the Zoning Code unambiguously encompasse[d] decks and stairways within the GFA[.]"[38]  We disagree.  The Board's reading is strained and does not preclude the statutory construction offered by Lingo.  Because we have long settled zoning ambiguities in

---

[35] 2018 Int'l Bldg. Code § 202, *adopted at* Code of the City of Rehoboth Beach § 102-1 ("The International Building Code, 2018 Edition, including Appendix Chapters E, F and J, . . . is hereby adopted as the Building Code of the City of Rehoboth Beach[.]" (emphasis removed); *see* Opening Br. at 23.

[36] The City has adopted the IBC in full as the City's own building code. *Id*. While it has not incorporated the IBC into the Zoning Code, we take note of the City's endorsement of the model statute in a closely related context.

[37] As discussed above, the City approved Lingo's initial application for a 25' x 25' deck on top of the first floor of the property.  App. to Answering Br. at B24.  Lingo additionally details an apparently extensive history of the City not counting decks, porches, and other similar structures as Gross Floor Area. Opening Br. at 10–11; App. to Opening Br. at 175–205. We need not consider this extrinsic evidence given our well-established rule of construction that zoning ambiguities be construed in favor of the property owner.

[38] Answering Br. at 12.

11

favor of the property owner, we must therefore reverse the Board's denial of Lingo's application.

As discussed, the Zoning Code, in pertinent part, defined Gross Floor Area as "[t]he sum of the gross horizontal areas of the several floors of a building measured from the exterior face of the exterior walls or from the center line of a wall separating two attached buildings[.][39] The Board argues that this definition, read alongside other defined terms, unambiguously applies to the Lingo Proposal. The Board's three-pronged logic proceeds as follows:[40]

- *First*, the Board observes that Zoning Code defined "structure" as "[a]nything constructed or erected, including any part thereof, the use of which requires permanent location on the ground or attachment to something having a permanent location on the ground[.]"[41] The Board says that the Lingo Proposal contemplates the erection of a "structure" under this definition.[42]

- *Second*, the Board argues that the Lingo Proposal seeks permission to add not only a structure but also a "building."[43] As mentioned, the Zoning Code defined "building" as "[a] structure, usually roofed,

---

[39] App. to Answering Br. at B105.
[40] Answering Br. at 17.
[41] App. to Answering Br. at B107.
[42] Answering Br. at 13–15.
[43] *Id.* at 15.

12

walled and built for permanent use, as for a dwelling or for commercial purposes."[44]

- *Third*, the Board offers that, because the Lingo Proposal envisions a "structure" and a "building," its railings are walls because the Zoning Code defined "wall" as "[t]he vertical exterior surface of a building[.]"[45]

The Board acknowledges that its reading "may in fact be long-winded and tortured[,] as Lingo suggests,"[46] but assures us that "the definitions of *structure*, *building*, and *wall* all work together to create an unambiguous interpretation of the GFA definition."[47]

Although we agree with the Board that the Lingo Proposal calls for a "structure" as the Zoning Code defined that term, for the reasons discussed above we cannot confidently say that the Lingo Proposal envisions a "building" with "exterior walls." Nevertheless, the Board argues that another provision of the Zoning Code reveals that the Board's approach is the only reasonable path. The Board calls this provision the "Open Porch Exclusion," which provided in pertinent part that

---

[44] *Id.*; App. to Answering Br. at B103.
[45] App. to Answering Br. at B108.
[46] Answering Br. at 16.
[47] *Id.* at 18 (emphasis in original).

> [t]he first 250 square feet of an open front porch shall be
> excluded from the gross floor area, provided that such
> porch is on the street side of the building, at the first-floor
> level, roofed, one floor with no living space or deck above
> the porch, meets the definition of open porch in § 270-4,
> and is not heated or air-conditioned. Any square footage
> in excess of 250 square feet shall be included in the gross
> floor area.[48]

According to the Board, "[i]f porches were never intended to be included in the GFA calculation, there would be no need for this narrowly drawn exception pertaining to porches."[49]

In our view, the Board's Open Porch argument overlooks that the Zoning Code separately defined "Open Porch" as a structure that may be roofed and entirely screened in.[50] Specifically, Open Porches may have guardrails, railings, floor-to-ceiling mesh screens "together with necessary framework," and "[n]ecessary posts or pillars *required to support the porch roof*."[51] Thus, the vertical exterior of any Open Porch may actually be load bearing, as well as screened for the comfort of gatherers within. This is entirely different than the uncovered, railed walkway proposed by Lingo. In our view, it would not be inconsistent for the drafters of the Zoning Code to intend to count some or all of an Open Porch within Gross Floor

---

[48] App. to Answering Br. at B110.

[49] Answering Br. at 25.

[50] Code of the City of Rehoboth Beach § 270-04, https://ecode360.com/7276706 (emphasis added). The Board's answering brief quotes the defined terms "structure," "building," and "wall," but does not—in its body or appendix—reproduce the definition of "Open Porch."

[51] Code of the City of Rehoboth Beach § 270-04, https://ecode360.com/7276706.

Area while excluding a railed egress structure designed to "serve as a walkway, not as a gathering place[.]"[52]

In sum, we do not believe that the Board offers the only reasonable interpretation of the Zoning Code in this case. Rather, even if it is technically possible to construct the Board's reading from the Zoning Code's defined terms, the Board's construction is strained and does not preclude Lingo's interpretation.

## IV

Local governments are empowered to reasonably restrict property use through zoning.[53] When they do so, they must define the restrictions in clear and unambiguous terms.[54] We hold that, in this case and for the reasons set forth above, the Zoning Code of the City of Rehoboth Beach did not unambiguously prohibit Lingo from building an unroofed exit walkway on its property. As a result, the City should have permitted the Lingo Proposal. We therefore reverse the Board's decision.

---

[52] App. to Opening Br. at A20.
[53] *Mayor and Council of New Castle v. Rollins Outdoor Advertising, Inc.*, 475 A.2d 355, 360 (Del. 1984).
[54] *Chase Alexa*, 991 A.2d at 1152.