# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

JOHN KIRBY,

      Appellant,

      v.

THE KENT COUNTY BOARD
OF ADJUSTMENT,

      Appellee.

)
)
)
)
)
)    C.A. No. K22A-02-003 NEP
)
)
)
)
)
)

Submitted: August 1, 2022
Decided: October 26, 2022

## <u>**MEMORANDUM OPINION AND ORDER**</u>

*Upon Appeal from the Decision of the Kent County Board of Adjustment*

**REVERSED**

John W. Paradee, Esquire, Stephen A. Spence, Esquire, Brian V. Demott, Esquire, and Mackenzie M. Peet, Esquire, Baird Mandalas Brockstedt, LLC, Dover, Delaware, *Attorneys for Appellant*.

Frederick A. Townsend, III, Esquire, Hudson, Jones, Jaywork & Fisher, Dover, Delaware, and Craig T. Eliassen, Esquire, Schmittinger & Rodriguez, P.A., Dover, Delaware, *Attorneys for Appellee*.

**Primos, J.**

Before this Court is an appeal from a decision of the Kent County Board of Adjustment (hereinafter the "Board"), appellee in this case. Appellant John Kirby (hereinafter "Mr. Kirby") is appealing the Board's decision upholding the determination of the Kent County Department of Planning Services (hereinafter the "Department") that Mr. Kirby's proposed construction did not fit the definition of "accessory cottage" under Sections 205-6 and 205-397.6(C) of the Kent County Code (hereinafter the "Code"). For the reasons that follow, the Board's decision is **REVERSED.**

## I.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Mr. Kirby is the owner of a property in Dover, Delaware, zoned as RS1-Single-Family Residential District (hereinafter "RS1 Zone").[1] The property currently contains a single-family dwelling, where Mr. Kirby resides.[2] One permitted use in the RS1 Zone is an accessory cottage,[3] defined as "[a] separate and subordinate dwelling unit that is located on the same lot as a single-family dwelling but is contained in a detached garage or other outbuilding."[4]

On September 21, 2021, Mr. Kirby applied to build an accessory cottage on his property.[5] The proposed unit would have consisted of a dwelling unit with a

---

[1] The stated purpose of the RS1 Zone is twofold:
> A. To provide for low-density residential development of a suburban character on lot sizes determined by the type of water and sewer service provided: individual on-site well and septic or public water and County sewer.
> B. To offer the possibility of a variety of housing types and life styles to be harmonious with low-density residential and low-intensity compatible agricultural uses.

Kent Cty. C. § 205-76.

[2] Tab 2 (Appeal Application from Mr. Kirby's Attorney), Ex. A (Property and Deed Information).

[3] Kent Cty. C. § 205-79.

[4] Kent Cty. C. § 205-6.

[5] Tab 2 (Appeal Application from Mr. Kirby's Attorney), Ex. C (Initial Application).

2

connected patio. However, the Department denied the application, stating that it was inconsistent with the definition of accessory cottage.[6]

On October 26, 2021, Mr. Kirby's attorney emailed a modified application to the Department.[7] The primary change in the new plan was that the proposed construction consisted of one building containing both a dwelling unit and a garage.[8] The Department once again did not accept the application, stating that it did not fit the definition of accessory cottage, and noted that "an accessory cottage requires the dwelling unit be contained in a detached garage or other outbuilding."[9] No further explanation was provided, but the Department provided information on how to appeal its decision to the Board.[10]

On November 1, 2021, Mr. Kirby filed an appeal with the Board, arguing that both proposals were consistent with the unambiguous meaning of the Code.[11] The Department's Planning Staff submitted a memorandum to the Board setting out two bases for its refusal to accept the application. First, it asserted again that the proposed unit did not fit the definition of accessory cottage "because it is not contained in, or within, a garage or outbuilding."[12] The Department asserted that this conclusion was based on "the floor plan, elevation drawings, and photographs submitted by the applicant . . ."[13] Second, the Department cited the Code's requirement that accessory cottages "be subordinate to the principal structure on the lot (i.e. single-family dwelling)."[14] The Department concluded that "a second stand-

---

[6] Id.

[7] Tab 1 (E-mail exchange between Mr. Kirby's attorney, Planning Staff and County Attorney opinion) [hereinafter "E-mail exchange"] at 4.

[8] Tab 2 (Appeal Application from Mr. Kirby's Attorney), Ex. D (Modified Application).

[9] Tab 1 (E-mail Exchange) at 3.

[10] Id.

[11] Tab 2 (Appeal Application from Mr. Kirby's Attorney) at 5.

[12] Tab 9 (Staff memorandum for December 16, 2021 Public Hearing) at 2.

[13] Id. at 1.

[14] Id. at 2.

3

alone dwelling on the property . . . creates a conflict as to which structure is principal, and which is subordinate."[15]

The Board held a public hearing on December 16, 2021, at which it heard a presentation from Jason Berry, Planning Supervisor of the Department, testimony from Mr. Kirby, and argument from counsel for Mr. Kirby and the Department.[16]  At the conclusion of the hearing, the Board voted four to one (with one recusal and one member absent) to affirm the Department's determination.[17]  The Board issued a Notice of Decision explaining its findings, summarized as follows: 1) the Code requires an accessory cottage to be in "an existing garage or other outbuilding and that it be in a subordinate dwelling"; 2) an accessory dwelling unit must be "subordinate to the principal use of the lot, specifically a single-family dwelling unit"; 3) Mr. Kirby was incorrect that an accessory dwelling unit in compliance with the size specifications in the Code was necessarily subordinate; 4) the cottage was 'contained' within itself rather than in an outbuilding; and 5) the cottage was not in a garage, but rather had a garage attached to it.[18]

Mr. Kirby appealed that decision to this Court on February 17, 2022, and filed an Opening Brief on May 9, 2022. The Board submitted an Answering Brief on June 8, 2022, and Mr. Kirby replied on June 30, 2022.  The case was submitted for decision on August 1, 2022.

## II. STANDARD OF REVIEW

On appeals from the Board, the Court's scope of review is limited "to correcting errors of law and determining whether substantial evidence exists in the

---

[15] *Id.*
[16] Tab 16 (Kirby Notice of Decision) at 1–5; Tab 19 (Dec. 16, 2022 [sic] Hr'g Tr.) [hereinafter "Hr'g Tr."].
[17] Tab 13 (Dec. 16, 2021 BOA Business Meeting minutes) at 11–13.
[18] Tab 16 (Kirby Notice of Decision) at 6.

4

record to support the Board's findings of fact and conclusions of law."[19] "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"[20] "Questions of law, including questions of statutory interpretation, are reviewed *de novo*."[21]

When reviewing decisions of the Board pursuant to 9 *Del. C.* § 4918, the Court may "reverse or affirm, wholly or partly, or may modify the decision brought up for review" but lacks the power to remand decisions to the Board.[22]

### III. DISCUSSION

The principles of statutory interpretation in Delaware are well-settled, but with an important variation specific to zoning law. The first step in all cases is to determine whether the statute is ambiguous.[23] If the statute is not ambiguous, then "the plain meaning of the statutory language controls."[24] A statute is ambiguous if it is "reasonably susceptible of different interpretations," but is not necessarily ambiguous merely because the parties disagree on its meaning.[25]

As the Delaware Supreme Court recently explained, the second step differs when interpreting ambiguous zoning laws. Generally, the Court would look to "extrinsic evidence, such as legislative history and any historical applications" in

---

[19] *Gilman v. Kent Cnty. Dep't of Planning*, 2000 WL 305341, at *2 (Del. Super. Jan. 28, 2000).
[20] *Go4Play, Inc. v. Kent Cnty. Bd. of Adjustment*, 2022 WL 2718849, at *3 (Del. Super. July 12, 2022) (quoting *McKinney v. Kent Cnty. Bd. of Adjustment*, 2002 WL 1978936, at *4 (Del. Super. July 31, 2002)).
[21] *Pizzadili Partners, LLC v. Kent Cnty. Bd. of Adjustment*, 2016 WL 4502005, at *3 (Del. Super. Aug. 26, 2016), *aff'd sub nom. LTR Properties, LLC v. Pizzadili Partners, LLC*, 157 A.3d 757 (Del. 2017) (TABLE).
[22] 9 *Del. C.* § 4918(f); *Mellow v. Bd. of Adjustment of New Castle Cnty.*, 565 A.2d 947, 950 (Del. Super. 1988) ("[T]he Superior Court cannot remand a case to the Board, upon appeal, for the purpose of making specific factual findings, or for conducting further hearing or evidence taking." (citing *Auditorium, Inc. v. Bd. of Adjustment of Mayor & Council of Wilmington*, 91 A.2d 528, 532 (Del. 1952))), *aff'd sub nom. Mellow v. Bd. of Adjustment of New Castle Cnty.*, 567 A.2d 422 (Del. 1989) (TABLE).
[23] *Chase Alexa, LLC v. Kent Cnty. Levy Court*, 991 A.2d 1148, 1151 (Del. 2010).
[24] *Id.* (quoting *Director of Revenue v. CNA Holdings, Inc.,* 818 A.2d 953, 957 (Del.2003)).
[25] *Id.*

5

order to discern the intent of the legislature.[26]  However, when ambiguity is present in a zoning law, "the interpretation that favors the landowner controls."[27]

## A. Definition of Accessory Cottage

The Code defines an "accessory cottage" as "[a] separate and **subordinate dwelling unit** that is located on the same lot as a single-family dwelling but is **contained in a detached garage or other outbuilding**."[28]  More specific requirements are set out in Code § 205-397.6(C), which provides in full:

> C. Accessory cottages.
>
> (1) An accessory cottage shall contain at least 220 square feet of floor area. The floor area of an accessory cottage shall not exceed 40% of the floor area of the single-family dwelling to which it is accessory or 1,200 square feet, whichever is greater. **Compliance with § 205-24D requiring that accessory structures not dominate in area, extent or purpose the principal use or structure shall be maintained.**
>
> (2) **For an accessory cottage which will be located within a new structure**, the exterior materials, roof form, and window spacing and proportions of the accessory cottage shall approximate those of the existing or proposed single-family dwelling.
>
> (3) **For an accessory cottage located within an existing garage or other outbuilding**, the structure is not required to approximate the exterior features of the existing single-family dwelling, but any exterior modification should be consistent with the architectural style of that structure unless the building is ungraded [sic] per the requirement for new structures.
>
> (4) Accessory cottages are permitted on nonconforming lots, but the buildings in which they are located, whether existing or proposed, shall

---

[26] *Jack Lingo Asset Mgmt., LLC v. Bd. of Adjustment of City of Rehoboth Beach*, 2022 WL 2813781, at *3 (Del. July 19, 2022).
[27] *Id.* (quoting *Chase Alexa*, 991 A.2d at 1152); *see also Dewey Beach Enterprises, Inc. v. Bd. of Adjustment of Town of Dewey Beach*, 1 A.3d 305, 310 (Del. 2010) ("[T]o the extent that there is any doubt as to the correct interpretation, that doubt must be resolved in favor of the landowner."); *Mergenthaler v. State*, 293 A.2d 287, 288 (Del. 1972) ("[Z]oning laws are to be interpreted in favor of the occupants of the land.").
[28] Kent Cty. C. § 205-6 (emphasis supplied).

meet the minimum property line setbacks and lot coverage requirements for the district in which they are located.

(5) Accessory cottages shall comply with the accessory structure setbacks for the respective zoning district. [29]

The Board concluded that Mr. Kirby's proposal did not fit the definition of accessory cottage because the Code requires that "a cottage must be 'in' an existing garage or outbuilding and that it be a subordinate dwelling."[30] The question of whether to affirm or reverse the Board's decision, then, turns on two issues: 1) whether the proposed accessory cottage is within a garage or other outbuilding and 2) whether it is subordinate to the primary dwelling.

## B. Appellant's Accessory Cottage is Within an Outbuilding

The Board's first conclusion, that an accessory cottage must be within an *existing* garage or outbuilding, rather than a newly constructed building, is inconsistent with the unambiguous meaning of the Code. "Statutes must be construed as a whole, in a way that gives effect to all of their provisions and avoids absurd results."[31] The Code contemplates that an accessory cottage might be placed "within a new structure" or "within an existing garage or other outbuilding," and provides separate requirements for each.[32] A requirement that the cottage be within an existing structure would render the entirety of Section 205-397.6(C)(2) superfluous. The Board acknowledges this on appeal, conceding that "a qualifying accessory cottage could be new construction" but arguing that the "confusion about that at the [Board] hearing is unfortunate, but a red herring."[33]

---

[29] Kent Cty. C. § 205-397.6(C) (emphasis supplied).
[30] Tab 16 (Kirby Notice of Decision) at 6.
[31] *Chase Alexa*, 991 A.2d at 1152; *see also Dewey Beach*, 1 A.3d at 307–08 ("[W]ords in a statute should not be construed as surplusage if there is a reasonable construction which will give them meaning . . ." (quoting *Oceanport Industries, Inc., v. Wilmington Stevedores, Inc.,* 636 A.2d 892, 900 (Del. 1994))).
[32] Kent Cty. C. § 205-397.6(C)(2) and (3).
[33] Appellee's Answering Br. on Appeal [hereinafter "Answering Br."] at 10.

In the Court's view, this misunderstanding is more than a "red herring." First, two out of the required four votes to affirm the Department's decision were expressly premised on this mistake,[34] and a third, while not without ambiguity, appeared to invoke the same reasoning.[35] Second, and more importantly, both the Board and the Department failed to articulate a principled construction of the definition of Accessory Cottage that would both account for accessory cottages within newly constructed outbuildings and justify the denial of Mr. Kirby's application. The two alternatives suggested by the Board are that Mr. Kirby could build an accessory cottage within his existing garage or that he could build an accessory apartment (a separate dwelling unit connected to the primary residence).[36] While acknowledging that an accessory cottage could in theory be within a new structure, the Board has not explained how an acceptable accessory cottage within a new structure would differ from Mr. Kirby's proposal.

Rather, the Board's primary argument on appeal is that Mr. Kirby's proposed accessory cottage is not inside an outbuilding at all.[37] In its decision, the Board rejected Mr. Kirby's "argument that an Accessory Cottage was by itself an outbuilding, and therefore contained 'within' itself."[38] Despite the focus on the words "in" and "within," the Board's conclusion ultimately turns on the premise that the building Mr. Kirby proposed to build is not itself an outbuilding.

---

[34] Tab 19 (Hr'g Tr.) at 70:3–6 ("I vote to affirm the County's ruling. I believe the County's definition is clear. An accessory cottage is within a building that is currently on the property."); *id.* at 71:19–20 ("I interpret [garage or other outbuilding] to mean a building already in existence.").

[35] *Id.* at 70:19–21 ("I believe that the planners have . . . interpreted the code correctly with the definition of accessory cottage . . . . [I]t needs to be an outbuilding or a garage built after it was already there.").

[36] Answering Br. at 11.

[37] Answering Br. at 10.

[38] Tab 16 (Kirby Notice of Decision) at 6.

"Outbuilding" is not defined in the Code. However, Merriam Webster defines it as "a building (as a stable or a woodshed) separate from but accessory to a main house."[39] The proposed structure fits this definition of "outbuilding"—it is a building, separate from and accessory to Mr. Kirby's house—600 feet of which would be devoted to a dwelling unit and 400 feet of which would be devoted to a garage.[40] The Board's conclusion to the contrary rests on the assumption that a building constructed for the primary purpose of containing an accessory cottage is not an outbuilding. This reading, however, finds no support in the text of the Code.

Elaborating on its conclusion, the Board wrote that "the code required [that] the outbuilding be **intended for use as a garage or other use, and the cottage be ancillary to that use,** and be located in or within said outbuilding."[41] However, the Board supplied no explanation for how this intended/ancillary use distinction is derived from the spatial descriptors "contained in" and "within." The Code expressly requires that the accessory cottage not "dominate in area, extent or purpose" the main dwelling.[42] However, it says nothing about the percentage of the interior space of the outbuilding it occupies or that its purpose must be ancillary to that of the outbuilding. The Board's reasoning suggests an implicit assumption that a qualifying outbuilding, even if newly constructed, must be constructed for reasons unrelated to the accessory cottage it will contain. Take, for example, the following statement by the chairperson—"frankly, I take exception to the thought that so now you built an outbuilding just so that you can put up an accessory cottage. I think that's inappropriate."[43] However, the Code itself makes no reference to the landowner's purpose in constructing the outbuilding.

---

[39] *Outbuilding*, Webster's New Collegiate Dictionary (3d. ed. 1973).
[40] Tab 19 (Hr'g Tr.) at 13:22–14:3.
[41] Tab 16 (Kirby Notice of Decision) at 6 (emphasis supplied).
[42] Kent Cty. C. § 205-397.6(C)(1).
[43] Tab 19 (Hr'g Tr.) at 68:10–14.

Finally, the Board emphasizes that "within" means "in or into the interior" or "inside," and argues that the proposed dwelling unit "is not an interior unit."[44] However, the Board fails to reconcile this assertion—that an accessory cottage must be a smaller unit in the interior of a larger outbuilding—with the rest of Code § 205-397.6(C)(2), which provides that "the exterior materials, roof form, and window spacing and proportions **of the accessory cottage** shall approximate those of the existing or proposed single-family dwelling."[45] Notably, this provision regulates the exterior appearance of the accessory cottage, rather than the exterior appearance of the outbuilding.[46] If "within" meant that an accessory cottage must be hidden inside a larger outbuilding, then regulating its exterior appearance would make little sense. The Code appears to contemplate a newly constructed outbuilding that is primarily an accessory cottage, complete with windows and a roof, like the unit proposed by Mr. Kirby. Thus, "within" cannot reasonably be construed to require that the cottage be a smaller unit hidden from view inside of an outbuilding.

In the Court's view, Mr. Kirby's proposed accessory cottage would be "contained in" and "within" an outbuilding, consistent with the plain meaning of the Code. The Board's conclusion that the proposed building is a free-standing dwelling instead of an outbuilding containing a dwelling unit is a subjective characterization unsupported by specific criteria or findings of fact for the Court to review. Even if an objective limiting principle could be read into the Code, the definition is at least

---

[44] Answering Br. at 10; *see also Within*, Webster's New Collegiate Dictionary (3d. ed. 1973).
[45] Kent Cty. C. § 205-397.6(C)(2) (emphasis supplied).
[46] By contrast, for an accessory cottage built within an existing garage or outbuilding, the Code provides that "the structure is not required to approximate the exterior features of the existing single-family dwelling, but any exterior modification should be consistent with the architectural style of that structure unless the building is ungraded [sic] per the requirement for new structures." Kent Cty. C. §205-397.6(C)(3).

10

reasonably susceptible of different interpretations and the interpretation favoring the landowner, Mr. Kirby, must therefore control.[47]

## C. The Meaning of "Subordinate" is Ambiguous, and an Interpretation Favoring the Landowner Controls

In addition to being within a garage or outbuilding, an accessory cottage must be a "subordinate dwelling unit" vis-à-vis the primary residence.[48] Code § 205-397.6(C)(1) sets specific size limitations on an accessory cottage, requiring that it "contain at least 220 square feet of floor area" but not more than "40% of the floor area of the single-family dwelling to which it is accessory or 1,200 square feet, whichever is greater." Mr. Kirby argued before the Board and maintains on appeal that a unit, like his, that complies with these size requirements is necessarily "subordinate" within the meaning of the Code.[49] The Board rejected this argument and concluded that Mr. Kirby's proposed cottage was not subordinate to the principal dwelling.

At the outset, the Court agrees with the Board that a unit complying with the size requirements for an accessory cottage is not *necessarily* subordinate. Section 205-397.6(C)(1) does not purport to define "subordinate" as used in Section 205-6, and even if it did, the second sentence in the section requires that "accessory structures not dominate in area, extent or purpose." While the size specifications relate to area and extent, any connection to "purpose" is tenuous.

_____

[47] The Board also argues that Mr. Kirby's proposal "violates the limitation of one principal use or structure per lot," *see* Kent Cty. C. § 205-14 ("[t]here may not be more than one principal use or principal structure on a lot"), and the express purpose of the RS1 Zone "to preserve low density housing" and its "suburban character." Answering Br. at 10–11. The first contention simply begs the question of whether the proposal meets the definition of accessory cottage, in which case it is an accessory use, not a principal use. Likewise, the low-density purpose of the RS1 Zone cannot be construed to prohibit accessory cottages altogether, or, as explained above, to limit them to buildings already in existence. In any event, any ambiguity must be resolved in favor of the landowner. *Jack Lingo*, 2022 WL 2813781, at *3.
[48] Kent Cty. C. § 205-6.
[49] Appellant's Op. Br. at 29–30; Tab 19 (Hr'g Tr.) at 34:13–35:9.

11

However, beyond rejecting this argument, the Board fails to offer its own interpretation of "subordinate" or to explain why Mr. Kirby's proposed cottage is not in compliance. The Department's explanation, that "a second stand-alone dwelling on the property . . . creates a conflict as to which structure is principal, and which is subordinate" is unsatisfactory.[50] An accessory cottage, which is by definition a separate dwelling unit, is explicitly authorized in the RS1 Zone,[51] so the presence of two dwelling units cannot *ipso facto* mean that the second unit is not "subordinate."[52]

Subordinate is not defined in the Code, and dictionary definitions of subordinate also provide little guidance. Merriam Webster defines it, as most relevant here, as "placed in or occupying a lower class or rank; inferior."[53] "Inferior," in turn, means "of little or less importance, value, or merit."[54] What these terms mean when describing the relationship between two dwelling units is far from clear. Thus, the Court finds that the term "subordinate" as used in the Code is "reasonably susceptible of different interpretations" and is therefore ambiguous.[55]

"[I]n order to enforce its interpretation of the Zoning Code" against Mr. Kirby, "the Board must be able to defend its reading as the only reasonable construction."[56] In *Jack Lingo*, the Court also dealt with a board of adjustment's interpretation of an undefined term in the applicable zoning code.[57] The Court explained that "[l]ocal

[50] Tab 9 (Staff memorandum for December 16, 2021 Public Hearing) at 2.
[51] Kent Cty. C. §§ 205-6 and 205-79.
[52] In its answering brief, the Board argues that "the Kirby dwelling unit proposal is not subordinate since it is not contained or within anything other than itself." Answering Br. at 12. However, this argument conflates the "contained in" portion of the definition, addressed above, and the "separate and subordinate" portion of the definition.
[53] *Subordinate*, Webster's New Collegiate Dictionary (3d. ed. 1973).
[54] *Inferior*, Webster's New Collegiate Dictionary (3d. ed. 1973).
[55] *Chase Alexa*, 991 A.2d at 1151.
[56] *Jack Lingo*, 2022 WL 2813781, at *3.
[57] *Id.*

governments are empowered to reasonably restrict property use through zoning" but "[w]hen they do so, they must define the restrictions in clear and unambiguous terms."[58]  In that case, since the zoning code did not "unambiguously prohibit" the structure proposed by Lingo, "the City should have permitted the Lingo Proposal."[59]  Similarly, the Code's requirement that an accessory cottage be "subordinate" does not "unambiguously prohibit" Mr. Kirby from building a 600 square foot accessory cottage on the same property as a 2,024 square foot primary residence.[60]

Absent power to remand, the Court will leave further elaboration of the precise meaning of "subordinate" to the Board or the Levy Court on future occasions.[61]  Here, it suffices to conclude that it falls far short of unambiguously prohibiting Mr. Kirby's proposed accessory cottage.

## IV. CONCLUSION

After *de novo* review of the Code language in this case, the Court finds that the Board committed legal error in concluding that Mr. Kirby's proposed construction was not consistent with the Code definition of accessory cottage. Therefore, the decision of the Board is **REVERSED.**

---

[58] *Id*. at *6.

[59] *Id.*

[60] Tab 19 (Hr'g Tr.) at 14:4–14:12.  While this decision rests on principles of statutory interpretation, the Court further notes that the record contains no evidence, much less substantial evidence, that the proposed cottage would "dominate in area, extent or purpose the principal use or structure" or that it is otherwise not "subordinate" to the principal dwelling.  Kent Cty. C. §§ 205-6 and 205-397.6(C)(1).

[61] In *Jack Lingo*, the Supreme Court found that Lingo had offered a "common-sense, natural reading of the term" and simply adopted that reading.  2022 WL 2813781, at *3.  However, for the reasons explained above, the Court is unwilling to simply adopt Mr. Kirby's conclusion that any unit that does not violate the accessory cottage size limitations is necessarily subordinate.

13

**IT IS SO ORDERED.**

_____
Noel Eason Primos, Judge

NEP:tls
*Via File & ServeXpress*
oc:    Prothonotary
cc:    Counsel of Record

14